ALVIN P. JOHNSON *vs.* EAST BOSTON SAVINGS BANK &
others.

Suffolk.   November 13, 1934. — April 29, 1935.

Present: CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Actionable Tort.   Conspiracy.   Pleading, Civil,* Demurrer.

A party by a demurrer does not admit an allegation of fact which is a mere conclusion from other facts alleged, unless such conclusion is necessary.

The facts that certain persons constituted the board of investment of a savings bank, which board was charged with the management thereof; that they were the active members of a large board of trustees, at whose pleasure the treasurer of the bank held his office; that said persons dominated the meetings of the board of trustees and controlled the recitals in the records of such meetings; and that the inactive trustees relied on said persons for information and guidance as to the matters acted upon by the board of trustees, did not show

that said persons exercised such a peculiar power or control over the reputation of the treasurer that he would have a cause of action against them for conspiracy to defame him by conveying to the public the impression that a resignation by him of his position was involuntary and resulted from improper conduct on his part.

TORT. Writ dated July 21, 1932, and afterwards amended.

The defendants demurred. The demurrer was heard in the Superior Court by *Pinanski,* J., and was sustained. The plaintiff appealed.

*A. Brayton,* for the defendants.

*E. S. Farmer,* for the plaintiff.

CROSBY, J. This is an action of tort to recover damages for alleged illegal and improper conduct on the part of the individual defendants, committed in pursuance of an alleged conspiracy.

The plaintiff in his brief states that the purpose of the alleged conspiracy is set forth in the record and is "that on or about May 1, 1929, the defendant corporation, through its officers and agents, and the said individual defendants . . . conspired together to injure and defame the plaintiff and deprive him of the reputation for integrity and faithful performance of his duties which had inured to him as a result of his long service in the position and offices as heretofore described . . . that the defendants did corruptly conspire and agree between themselves and the other members of the board heretofore described as deceased to cause to make it appear to the public in general and more particularly to those of the public who were interested in banking matters that the termination of the services of the plaintiff as treasurer of the defendant bank was not in truth and fact voluntary but was brought about as a result of some improper conduct on his part while in such position of trust, meaning and intending thereby to deprive the plaintiff of his well-earned reputation for probity and integrity gained by his long and faithful service as aforesaid."

The plaintiff contends in his brief that the defendants occupied peculiar positions of power, coercion and control over the reputation of the plaintiff as a banking man, both in the banking community and with the general public;

that this "peculiar and unique position of control and power of coercion is set forth in the following allegations: 1. That the plaintiff had been in the employ of the defendant bank as an employee and treasurer for forty-six years . . . and that the defendants as officers were superior to the plaintiff, who held his office according to the by-laws of the bank [art. 2 thereof], at the pleasure of the trustees of said bank. . . . 2. That the individual defendants, together with the persons described as deceased, constituted the entire board of investment and that under the by-laws of said bank the management thereof was reposed in said board of investment. . . . 3. That the three individual defendants, together with those named as deceased, were the only active members of the board of trustees. . . . 4. That these defendants were in possession and control of the books and records of both the board of investment and board of trustees. . . . 5. That due to their active connection with the bank the individual defendants dominated all meetings of the board of trustees and caused only such matters as they desired to be brought to the attention of their cotrustees. . . . 6. That they controlled the recitals in all records of meetings of trustees and that the remaining inactive trustees relied exclusively on the individuals named as defendants and the individuals described as deceased for all information and guidance as to the matters to be discussed and passed on by them. . . . 7. That as a result of these officers' positions, dominance of meetings and control of records and the relation of the plaintiff in his office to these defendants, . . . the defendants were in a peculiar and effective position of power to effect [*sic*] and control the reputation of the plaintiff." The plaintiff further contends "that the gravamen of the declared wrong was the combination or confederation of the men occupying such positions and exercising such power"; that the injury to him "resulted not so much from the acts done but rather from the power and force such acts acquired from a combination of defendants occupying the positions and exercising the power acquired from their unique situation"; and that the acts done by the defendants were "alleged as

follows, to wit: (1) that the defendants, illegally and corruptly purporting to act as members of the board of investment, improperly and illegally accepted a resignation addressed to the trustees of an office within the power of the trustees rather than of the board of investment . . .; (2) that the defendants illegally recorded the plaintiff's resignation on the records of the board of investment with full knowledge and with the purpose of having it read by the bank examiner and accountants of the bank to erroneously give them the impression that the termination of the plaintiff's connection with the bank was involuntary and the result of improper conduct on his part, and that such records were seen and read by the parties so intended with the consequent impression therefrom . . .; (3) that the defendants improperly prepared a call for a regular meeting of the trustees and wrongfully omitted therefrom any mention of the resignation of the plaintiff as an item of business to be transacted at this meeting for the purpose as set forth . . .; (4) that at said meeting the defendants appointed a codefendant to draft resolutions of appreciation of said trustees for the faithful services of the plaintiff but corruptly arranged that the records of said meeting omitted to note the appointment of a member to draft such resolutions and maliciously refused to permit said resolutions to be drawn . . .; (5) that in response to specific requests of the press in pursuance of said purpose the defendants declined to state the reason for the plaintiff's resignation, with a view that their silence might be erroneously interpreted, to the damage of the plaintiff's reputation . . .; (6) that in response to inquiries of the general public and members of the banking community as to the whereabouts of the plaintiff the defendants answered: 'Mr. Johnson is no longer with this bank. We know nothing of his whereabouts.' That the latter part of this response was untrue to the knowledge of the defendants and corruptly stated in pursuance of the plan as set forth.''

The defendants demurred to the plaintiff's substitute declaration on several grounds, the first being that the matters contained in the declaration are insufficient in law

to enable the plaintiff to maintain his action. From the order sustaining the demurrer the plaintiff appealed.

"The averment of a conspiracy in the declaration does not ordinarily change the nature of the action, nor add to its legal force or effect. The gist of the action is not the conspiracy alleged, but the tort committed against the plaintiff, and the damage thereby done . . . [him] wrongfully. Where damage results from an act which, if done by one alone, would not afford ground of action, the like act would not be rendered actionable because done by several in pursuance of a conspiracy." *Boston* v. *Simmons*, 150 Mass. 461, 463. *Bilafsky* v. *Conveyancers Title Ins. Co.* 192 Mass. 504, 506. The power of coercion exercised by more than one person must be a power greater than that which a single person in a similar relation would have to render it actionable. *Cummings* v. *Harrington*, 278 Mass. 527, 530. The allegation in the case at bar that after the plaintiff's resignation the defendants refused to allow the trustees to pass resolutions expressing the appreciation of the trustees for his faithful services fails to disclose any actionable conspiracy; nor was it actionable to discharge an employee even under such circumstances as to impute dishonesty to him, as an action of tort does not lie against an employer for discharging a servant or other employee. *Comerford* v. *West End Street Railway*, 164 Mass. 13, 15. If the defendants prevented the adoption of resolutions there was no greater wrong to the plaintiff than there would be if an individual had prevented it. The board of investment had no greater power of coercion over the officers of the bank than an individual manager would have had. Besides, the individual defendants had no power of coercion over the trustees. The allegations of the declaration in this respect are only that the board of investment dominated the board of trustees by bringing to the attention of the latter only such matters as it desired, and that the board of trustees relied upon the board of investment for all its information and guidance. The declaration does not allege that it had any power to coerce the board of trustees by threats of injury to the members of that board.

The board of investment was in the same relation to the trustees as an individual manager would be and had no greater power of control. There is no allegation in the declaration of any unlawful act of the defendants which would make a conspiracy actionable. The statement of the defendants that "Mr. Johnson is no longer with this bank. We know nothing of his whereabouts," and the refusal to talk with representatives of newspapers fail to set forth a cause of action for defamation. The records of the bank respecting the plaintiff's resignation are not quoted in the declaration and cannot be held to be defamatory.

In the case of *Willett* v. *Herrick,* 242 Mass. 471, cited and relied on by the plaintiff, there were fiduciary relations, and also there was a peculiar commanding influence of the defendants over credit sources. In the recent case of *Caverno* v. *Fellows,* 286 Mass. 440, it was held that there were no unusual circumstances or power of coercion to make actionable the conduct of the defendants. See also *Loughery* v. *Central Trust Co.* 258 Mass. 172, and *Cummings* v. *Harrington,* 278 Mass. 527. Mere numbers acting simultaneously may create unusual power of coercion, as for example in *Gregory* v. *Duke of Brunswick,* 6 Man. & G. 205, or in boycott or labor cases. *Pickett* v. *Walsh,* 192 Mass. 572. *Plant* v. *Woods,* 176 Mass. 492. In strike cases and trade agreement cases, however, damages caused by concerted action may have the excuse or justification of competition or self-interest and there will be no tort if the means are not unlawful. See *Robitaille* v. *Morse,* 283 Mass. 27, 35. Such cases may well be considered in a separate category.

In the case at bar the allegation that a peculiar force attended the various acts done by the combined defendants as a result of their position and relation to the plaintiff is only a conclusion from the other allegations which relate in detail the actual facts as to the present situation of the defendants and the plaintiff. As a conclusion from facts recited it need not be accepted as true. A demurrer admits only facts well pleaded and does not admit inferences from those facts unless they are necessary inferences, *Loughery*

v. *Central Trust Co.* 258 Mass. 172, 177, nor does it admit conclusions of law from facts averred, *Jones* v. *Dow*, 137 Mass. 119, 121. In *Willett* v. *Herrick*, 242 Mass. 471, at page 484, the influence of the defendants in financial circles was stated as a fact and it was held that it must be assumed to be true in passing on the validity of the declaration. The allegation of the defendants' peculiar power of coercion in the present case, however, is postulated on allegations which describe the exact situation from which the power of coercion and domination is alleged to arise. There is nothing disclosed to show added force due to combination. It was said in *Cummings* v. *Harrington*, 278 Mass. 527, at page 530: "The declaration discloses no peculiar power of coercion of the plaintiff possessed by the defendants in combination which any individual standing in a like relation to the plaintiff would not have had." As was held in *Comerford* v. *West End Street Railway*, 164 Mass. 13, 15, an action of tort does not lie against an employer for discharging a servant under such circumstances as to impute to him a charge of dishonesty. That in substance is what is charged in the present case. The plaintiff contends that there is a material difference here, in that the defendants were in a position to make it appear to the public that twenty-five trustees had deliberately taken action to discharge him under circumstances imputing improper conduct, whereas only seven had actually committed the acts. Even if the whole twenty-five had been actually involved in a plan to discharge the plaintiff or to deal improperly with his resignation, still they merely take the place of the individual employer. Their action is not the equivalent of separate statements made to the public at different times and places by them as individuals. Their conduct is one act of discharging an employee under doubtful circumstances, and may be likened to the case of an individual employer. We are of opinion that no peculiar power of coercion over the reputation of the plaintiff is disclosed with respect to either the resignation or any of the other acts. The statement of this court in the recent case of *Caverno* v. *Fellows*, 286 Mass. 440, at pages 443–444, is pertinent

to the case at bar. It was there said: "The allegation that the defendants conspired with respect to the plaintiff, standing by itself alone, does not constitute ground for civil relief. The gist of the action is the tortious act of the defendants. The effect of the charge that the defendants conspired together is to fix a joint liability on the defendants. If there is no tort set out as to a single defendant, conspiracy adds nothing except in instances where mere force of numbers acting in unison or other exceptional circumstances may make a wrong. The case at bar is not of that nature."

The demurrer was properly sustained so far as it rests on conspiracy. As the plaintiff does not rely on the separate acts of the defendants as independent torts it is unnecessary to refer to them, nor do we deem it necessary to deal with questions of uncertainty as to some of the allegations.

*Order sustaining demurrer affirmed.*