DAVID J. TIERNEY, JR., INC. *vs.* T. WELLINGTON
CARPETS, INC.

Berkshire.    April 25, 1979. — August 13, 1979.

Present: BROWN, GREANEY, & KASS, JJ.

*Contract*, What constitutes.

In an action to recover damages for breach of contract, the judge did
not err in denying the defendant's motion for a directed verdict
where there was conflicting testimony as to whether the defendant
had withdrawn its offer prior to acceptance of it by the plaintiff.
[239-240]

In an action to recover damages for breach of contract, the judge did
not err in denying the defendant's motion for a directed. verdict
where there was no clear expression of intent by the defendant in
its offer that the plaintiff's acceptance of its bid was required to be
made in a particular and exclusive manner and there was evidence
from which the jury could find that the plaintiff had effectively ac-
cepted the offer in another manner. [240-241]

CIVIL ACTION commenced in the Superior Court on
March 4, 1976.

The case was tried before *George, J.*, a District Court
judge sitting under statutory authority.

*Brendan L. Hoyt, Jr.*, for the defendant.

*Michael J. Shepard* for the plaintiff.

BROWN, J. The plaintiff, David J. Tierney, Jr., Inc.
(Tierney), commenced this action in the Superior Court to
recover damages resulting from the defendant's (T. Wel-
lington) alleged failure to perform under a contract for
the installation of carpeting. The case was tried before a
judge and jury and a verdict was returned in Tierney's
favor in the amount of $12,131 plus interest. T. Welling-
ton appealed, claiming that the judge erred in denying its
motion for a directed verdict.[1] In support of its motion, T.

[1] T. Wellington's alternative motions pursuant to Mass.R.Civ.P.
50(b) and 59(a), 365 Mass. 814 & 827 (1974), were also denied.

238                                  8 Mass. App. Ct. 237

David J. Tierney, Jr., Inc. *v.* T. Wellington Carpets, Inc.

Wellington argued that there had been no binding agreement because Tierney's purported acceptance of the contract terms had been ineffective. We affirm.

The pertinent evidence is summarized. In the summer of 1975 Tierney was preparing to submit a bid for the job of general contractor in the renovation of the Pittsfield High School. Tierney solicited subbids and received from T. Wellington on the morning of September 11, 1975, a subbid for the installation of carpeting at a cost of $22,869. This subbid was substantially lower than any other subbid received by Tierney.[2] David J. Tierney, Jr., the plaintiff's president, testified that on September 11 he received a telephone call from a person at T. Wellington's office to whom he mentioned that T. Wellington's bid appeared to be unusually low. David Tierney also testified that the person with whom he spoke at T. Wellington's office said he would check to see if the bid was correct and that "he would get back to me by twelve [noon] o'clock" that day. He further testified that he did not hear from T. Wellington prior to 2 P.M. on September 11, 1975, the time designated for submitting bids on the general contract. Tierney submitted its bid which included T. Wellington's subbid of $22,869 and the general contract was awarded to it later on that same day.

This testimony was contradicted by Ralph A. DeMarco, T. Wellington's estimator and job coordinator in September, 1975. DeMarco testified that he talked with David Tierney the day before the bidding closed and when informed that T. Wellington's bid was substantially lower than that of any of the other subbidders, he told Tierney not to use the bid until he heard from him (DeMarco). He further testified that he spoke to a receptionist at Tierney's the next day and submitted a revised bid.

_____

[2] It has not been argued here, or below, that the defendant's subbid was so different from the others that the plaintiff could not reasonably have considered it responsible.

On September 13, 1975, after submitting its bid on the general contract, Tierney received a second subbid from T. Wellington, dated September 12, 1975, which listed the cost of the carpeting job at $37,869. On September 19, 1975, Tierney mailed an unexecuted subcontract to T. Wellington in the amount of $22,869. T. Wellington refused to sign the contract or to install the carpeting. Tierney then contracted with Raleigh Carpets for the installation of the carpeting at a cost of $35,000. Tierney brought this action to recover the difference between the amount stated in T. Wellington's first subbid and the amount paid to Raleigh Carpets.

1. The judge properly submitted to the jury the question whether a contract existed between the parties. "Ordinarily the question whether a contract has been made is one of fact. If the evidence consists only of writings, or is uncontradicted, the question is for the court; otherwise it is for the jury." *Bresky* v. *Rosenberg*, 256 Mass. 66, 75 (1926). See *Boston Box Co.* v. *Shapiro*, 249 Mass. 373, 377 (1924). Here there was conflicting testimony on the question whether T. Wellington had withdrawn its first offer prior to any acceptance of it by Tierney. T. Wellington offered testimony which tended to prove that it had withdrawn its first offer prior to acceptance by Tierney. Testimony favorable to Tierney, on the other hand, tended to prove that the offer had not been withdrawn but remained open when Tierney relied upon it in submitting its bid. Where there is conflicting evidence on the question whether a contract has been created, the question is one for the jury. *Beach & Claridge Co.* v. *American Steam Gauge & Valve Mfg. Co.*, 202 Mass. 177, 183 (1909). See also *Loranger Constr. Corp.* v. *E.F. Hauserman Co.*, 376 Mass. 757, 760 (1978) (decided after the briefs were filed in this case but prior to oral argument). The jury could have found that T. Wellington's offer had not been revoked, that Tierney relied upon it in submitting its bid for the general contract, and that T. Wellington was thereby bound. *Id.* at 760-761 & n.1. See Restatement (Sec-

ond) of Contracts § 89B (2) & Illustration 6 (Tent. Drafts Nos. 1-7, 1973).

2. T. Wellington makes the further argument that notwithstanding the conflicting testimony with respect to the oral negotiations (discussed above) Tierney never accepted its offer because its subbid required a particular mode of acceptance which Tierney failed to comply with, and any other form of attempted acceptance was ineffective.[3] T. Wellington thus asserts that Tierney could accept only by delivering to T. Wellington an executed contract on "the standard form provided by Northeast Flooring Contractor's Association [NEFCA]." There was no reversible error.

The offeror has full control over his offer and may prescribe a particular and exclusive mode of acceptance. To be effective the acceptance must be made in the manner required by the offer. *Lewis* v. *Browning*, 130 Mass. 173 (1881). *Horne* v. *Niver*, 168 Mass. 4, 5 (1897). *Lawrence* v. *Rosenberg*, 238 Mass. 138, 141 (1921). See 1 Williston, Contracts § 76 (3d ed. 1957). And if a purported acceptance substantially varies from the terms of the offer it is ineffective, creating no binding agreement. *Bank of the United States* v. *Thomson & Kelly Co.*, 290 Mass. 224, 228 (1935). See *Peretz* v. *Watson*, 3 Mass. App. Ct. 727, 728 (1975). In our view there was sufficient evidence from which the jury could conclude that Tierney accepted the offer of T. Wellington, thereby creating a binding agreement.

Although an offeror, as the creator of a power of acceptance, may demand an exclusive mode of acceptance, we think that other forms of acceptance are ineffective only "if the offeror clearly expresses, in the terms of the com-

---

[3] The defendant's subbid provided as follows. "This bid is subject to acceptance, award and tender of executed contract and contract documents within 30 calendar days from the above date; the undersigned agrees to execute said contract within 5 working days thereafter on the standard form provided by Northeast Flooring Contractor's Association."

municated offer itself, his intention to exclude all other modes of acceptance." 1 Corbin, Contracts § 88, at 373 (1963). The language in the bid here is, at best, ambiguous as to whether it required an offeree to respond by tendering an executed contract on an NEFCA form. The bid provides that "the undersigned [T. Wellington's president] agrees to execute said contract within five working days thereafter on the standard form provided by Northeast Flooring Contractor's Association." The bid does not state that the offeree has an obligation to use the NEFCA form. Without a clear expression of intent by the offeror that acceptance of the bid could be made only by the use of the NEFCA form the jury could have found that Tierney had effectively accepted the offer in another manner.[4] See Restatement (Second) of Contracts § 61 & Comment a (Tent. Drafts Nos. 1-7, 1973).

The jury could also have found that Tierney's failure to deliver an executed contract was not a substantial variance from the terms of the offer. Compare *Peretz* v. *Watson, supra.* Contrary to T. Wellington's contention, it is not clear from the language of the bid that it required that Tierney be the first party to execute the contract. The contract may have merely required that once the offer had been accepted, thereby creating a binding agreement, the parties were bound to execute a formal contract within thirty days of the date of the bid to serve as a written memorial of the terms of the agreement. A party to a contract may be found to have entered a binding agreement, prior to the execution of a formal contract, if it is found that the parties intended to be presently bound. *Nigro* v. *Conti,* 319 Mass. 480, 482 (1946). See *Murphy* v. *Chichetto,* 323 Mass. 11, 14 (1948).

---

[4] The jury could have found that the offer was "accepted by the doing of an act, using the defendant's [subbid] in submitting the plaintiff's bid. Acceptance in this way might be complete without notification to the offeror." *Loranger Constr. Corp.* v. *E.F. Hauserman Co.,* 376 Mass. 757, 762 (1978). Or the jury could have found that the offer had been accepted when Tierney mailed a subcontract to T. Wellington. *Id.*

3. Deciding as we do that the evidence made a case for the jury on the basis of the plaintiff's reliance on the defendant's promise, i.e., a traditional contract theory, we need not discuss the question whether the judge could properly apply the provisions of the Uniform Commercial Code (G. L. c. 106, § 2-207) to the circumstances of this case. In any event, even if we were to assume that the judge incorrectly relied on the Code in his denial of the defendant's motion for a directed verdict, it would be immaterial because "[i]t is familiar law that a right ruling will be sustained although a wrong reason was given." *White* v. *E.T. Slattery Co.*, 236 Mass. 28, 35-36 (1920). *Weidman* v. *Weidman*, 274 Mass. 118, 125 (1931). See *Doeblin* v. *Tinkham Dev. Corp.*, 7 Mass. App. Ct. 720, 722 (1979).

4. The defendant's various postjudgment motions raise no question of law not already discussed above.

*Judgment affirmed.*

*Order denying motion for new trial affirmed.*