Dortch-Okara, J.
This matter comes before the court on plaintiffs’ motion to dismiss Count VI (civil conspiracy), Count VII (violation of G.L.c. 186, §14 and/or §15F), Count VIII (violation of G.L.c. 184, §18), and Count X (breach of contract) of defendant’s counterclaim pursuant to Mass.R.Civ.P. 12(b)(6). Plaintiffs argue that defendant has failed to state claims upon which relief may be granted. For the reasons set forth below, the court ALLOWS plaintiffs’ motion.
BACKGROUND
On February 26, 1997, plaintiffs filed this action seeking to remove defendant, a former employee, from their residential property. On March 11, 1997, the court entered a preliminary injunction which ordered the defendant to vacate the premises.[1] After the defendant failed to vacate the premises, the court modified the preliminary injunction by issuing an execution for possession on March 21, 1997. Defendant ultimately vacated the premises and filed a nine-count counterclaim against plaintiffs.
Defendant’s counterclaim sets forth the following factual allegations which, for the purpose of this motion, the court accepts as true:
Plaintiffs, Lee Albright, Edward P. Lawrence, James Lawrence, III, and Robert P. Lawrence, are the owners of Allandale Farm, Inc. (“Allandale"), a Massachusetts corporation that owns the farm and residential premises at 278 Allandale Road in Brookline. Defendant, Robert Koch (“Koch”), worked for Allandale from 1988 through 1997 as the person in charge of the farming. Koch was hired for “permanent employment” subject to his ability to perform financially in terms of making the farm profitable.
Koch’s compensation for the first year included salary and the right to occupy and use a house located adjacent to the farm, provided that he paid all the utilities and costs. He also received a bonus for meeting certain financial expectations from 1989 to 1996. Allandale later paid the cost of utilities for the house. Changes in the compensation package were usually effective the first day of every January.
On January 7, 1997, when Koch’s employment was terminated, he was offered $10,000.00 in exchange for, among other things, a general release.[2] Koch believed that he was owed more money than what was offered, but took no steps to commence legal action against plaintiffs at that time. On February 11, the January 7 offer was withdrawn.
When Koch would not agree to the terms demanded by plaintiffs to settle his contract dispute, plaintiffs sought an order for defendant to vacate the residential premises. Plaintiffs took this action in spite of the school attendance problem an order would cause for the defendant’s children and even though they were not interested in using the premises.[3] After the preliminary injunction was granted, Koch was advised, by letter dated March 13, 1997, thathe and his family could continue to occupy the residential premises for no charge until June 30, 1997. The plaintiffs offered Koch $10,000.00 for his compliance with the provisions of the letter, including the requirement that he forgo any claims relating to his termination. Koch did not accept the offer, but agreed to pay rent for his continued occupancy of the residential property in order keep his children in school. Plaintiffs refused Koch’s offer to pay rent and sought an execution for possession. Plaintiffs also sought restraining orders against defendant on behalf of the individual plaintiffs and the farm manager, falsely alleging that- Koch had threatened the life of the farm manager.
Still later, plaintiffs offered to extend the time of Koch’s occupancy of the residential premises beyond the court order if he would agree to sign a general release. Again, defendant refused to release his claims as plaintiffs demanded and, instead, vacated the premises.
DISCUSSION
In deciding a motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6), the court must accept all well-pleaded factual allegations in the counterclaim as true and draw all reasonable inferences in favor of the nonmoving party. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). To prevail on the motion, plaintiffs, as the moving party must prove that there is no set of facts which the defendant could prove in support of his claim that would entitle him to relief. Nader v. Citron, 372 Mass. 96, 98 (1977).
Defendant agrees with the general standard of review, but argues that the standard is different as applied to his counterclaim, under the holding of Whalen v. Nynex Info. Resources Co., 419 Mass. 792 (1995). Defendant relies on the Court’s statement that “the plaintiff does not have to prove each of the four elements to establish a prima facie case in order to avoid a directed verdict... Rather, the plaintiff must produce evidence that, if believed, would be sufficient to establish facts that would entitle him to judgment.” Id. at 796.
Whalen is an employment discrimination case that involved “disparate treatment.” In a disparate treatment case, “proof of the employer’s discriminatory motive is critical” and a framework of shifting burdens of persuasion and production of evidence was adopted. Id. at 795. Therefore, plaintiff only had the initial burden of establishing a prima facie case. Whalen is not applicable to the case at bar and does not imply any special standard for the counterclaim as suggested by defendant.
*198 I. CIVIL CONSPIRACY
Comat VI of the defendant’s counterclaim alleging civil conspiracy fails to state a claim upon which relief can be granted. First, there is a confusion as to which type of conspiracy defendant alleges. Plaintiffs argue that defendant should establish the element of “peculiar power of coercion,” as required with one type of civil conspiracy. Defendant contends that his allegation of “joint action” or agreement between the parties is sufficient based on a different type of civil conspiracy, as in Aetna Cas. Sur. Co. v. P&B Autobody, 43 F.3d 1546 (1st Cir. 1994).
Under Massachusetts law, two possible causes of action may be called “civil conspiracy.” Id. at 1563. The first kind of civil conspiracy is one of a coercive type. This is a veiy limited cause of action. Milford Power v. New England Power Co., 918 F.Sup. 471, 482 (D.Mass. 1996). In order for the defendant to state such a claim, he must allege that plaintiffs 1) acted in unison, and 2) possessed some peculiar power of coercion that they would not have had if they had been acting independently. Id. at 482; Neustadt v. Employers’ Liab. Assur. Corp., 303 Mass. 321, 325 (1939). Evidence of mere joint tortious activity is insufficient to prove this type of conspiracy. Milford Power, 918 F.Sup. at 482. Since the defendant argues that his counterclaim is based on the other type of civil conspiracy, there is no need for further analysis and the court turns now to the second type.[4]
The second kind of civil conspiracy is related to a theory of common law joint liability in tort. It is the concept that where two or more persons act in concert, each will be jointly and severally liable for the tort. Aetna, 43 F.3d at 1564. As argued by the defendant, there is no need to establish the element of “coercion.” However, to state a claim based on this sort of civil conspiracy, there must be 1) a common design or an agreement, express or implied, between two or more persons to do a wrongful act, and 2) proof of some tortious act in furtherance of the agreement. Id. The mere allegation that the plaintiffs conspired with respect to the defendant, standing by itself, does not constitute grounds for relief. Neustadt, 303 Mass. at 325; Johnson v. East Boston Sav. Bank, 290 Mass. 441, 448 (1935). If there is no tort set out as to a single party, the charge of conspiracy adds nothing unless there is a showing of a wrongful act in addition to the parties’ concerted action. Johnson, 290 Mass. at 448.
In Aetna, there was an agreement between the defendants to defraud an insurance company. In this case, there is no allegation of any tortious or other wrongful act in furtherance of an agreement. In contrast to the Aetna case, there is no allegation of fraud or deceit that caused damage to the defendant.[5] Defendant alleges that plaintiffs and their employee, John Lee, acted in unison to terminate his employment, force him to sign an agreement concerning his employment contract, and especially evict him and his family from the residential premises. However, harm resulting to the defendant by legal means, from plaintiffs’ exercise of their legal right to petition for a preliminary injunction does not create a cause of action. Deslauries v. Shea, 300 Mass. 30, 34 (1938). Obtaining the preliminary injunction against the defendant does not constitute a wrongful or tortious act. Furthermore, neither the act of making an offer of settlement nor the purpose behind making the offer is alleged to be unlawful or tortious.
In addition, the criminal cases cited by defendant are not applicable in his civil conspiracy claim. The nature of a civil conspiracy claim and the proof required to support it differ significantly from elements and proof required to support criminal conspiracies. Aetna, 43 F.3d at 1563. This civil conspiracy claim is mainly based on the act of plaintiffs evicting defendant from the residential premises. Even if the court assumes that there was an agreement among the plaintiffs, there is no allegation of any tortious or other wrongful act in furtherance of the agreement.
II. VIOLATION OF G.L.c. 186, §14 AND/OR §15F
1. G.L.c. 186, §14
In Count VII of his counterclaim, the defendant alleges a violation of G.L.c. 186, §14. Defendant claims that plaintiffs violated this statute by interfering with his right to occupy the residential premises. The relevant portion of the statute provides as follows: “. . . any lessor or landlord who directly or indirectly interferes with the quiet enj oyment of any residential premises by the occupant, or who attempts to regain possession of such premises by force without benefit of judicial process, shall be punished ...”
On its face, the statute appears to relate to a traditional landlord-tenant relationship. Generally, when housing accommodations are furnished to an employee by an employer as an incident of employment, a landlord-tenant relationship is not created, but rather a license coextensive with the employment. Moreno v. Stahmann Farms Inc., 693 F.2d 106, 107 (10th Cir. 1982); Beacon Park Assoc. v. Corbett, No. 96-J-693 (Mass.App.Ct. Oct. 25, 1996) (citing Schoshinski, American Law of Landlord and Tenant §1.6 (1980 ed. and 1995 cum. supp.)). Nevertheless, there can be a landlord-tenant relationship in which the tenant is protected by § 14 if there is the intent that the employee receive a leasehold. Such intent may be found in circumstances in which 1) payments for occupancy of the premises have been received based on a lease, 2) the term agreed upon extends beyond the period of employment, and 3) the employee had resided on the premises prior to the employment. Schoshinski, American Law of Landlord and Tenant §1.6 (1980 ed. and 1995 cum. supp.). In this case, however, defendant has alleged no facts that would suggest he was a tenant of the plaintiffs. As the defendant had no independent right to remain on the property apart from his employment and would not be *199 living in the house except for the employment, Mr. Koch was not a tenant, but a licensee whose right to occupy the premises was conditioned upon his employment. Moreno, 693 F.2d at 107.
Despite the language of the statute, there has been some disagreement as to whether a landlord-tenant relationship is an absolute requirement under §14. In Carlson v. Boudreau, the court ruled that in order to enjoy the protection afforded by the statute, the occupant must be a tenant. 1985 Mass.App.Div. 72, 73. It was decided that the term “occupant” may be deemed synonymous with the term “tenant” because the word “occupant” in §14 must be taken in the context of a legislative imposition of civil and criminal liability upon landlords for interference with or termination of lawful possessory interest. Carlson, 1985 Mass.App.Div. at 73. However, in Serreze v. YWCA of Western Massachusetts, it was decided that a classic “tenancy” between the parties is not a dispositive factor because such a relationship is not required for statutory protections to attach. 30 Mass.App.Ct. 639, 643 (1991). The Court specifically focused on the fact that the statute used the word “occupant” instead of tenant and the term “any residential premises.”
Even though the Court in Serreze did not believe that a “classic tenancy” was required, there was no suggestion that a “general landlord-tenant relationship” was not needed. The court mainly suggested that in construing the term “tenant” the court can look beyond rigid common law definitions to effectuate an appropriate remedy and that such remedial statutes can be liberally construed to effectuate the apparent legislative purpose. Id. at 643 (see footnote 9). In Serreze, the complainants who were recipients of a state-aided public housing program were not “classic tenants,” but they were closer to the “tenant” status. The program participants in Serreze paid a monthly rent of 25% of their income (see footnote 6). Serreze provides no comfort to the defendant in the case at bar. Hence, he can argue no special factors that would cause him to be afforded the protections of a tenant’s status.
Moreover, in support of his claim, the defendant relies on Attorney General v. Dime Sav. Bank of New York, 413 Mass. 284 (1992). In Dime, the Court ruled that “a mortgagee who forecloses on real property by sale may not bring trespass action against a holdover tenant or mortgagor in actual possession of the foreclosed property.” Id. at 285. Compared to the defendant who was a licensee with no right of possession, the complainants in the Dime case were holdover mortgagors or tenants who held recognized propriety and lawful possessory interests in the realty at issue.
Even if §14 were applicable to defendant, it has not been violated as it is undisputed that the plaintiffs did not regain possession of the premises by force. In order to violate the statute, possession has to be regained by force without benefit of judicial process. The statute came into existence because of the general disapproval of self-help evictions. Serreze, 30 Mass.App.Ct. at 643. In Serreze, the occupant of the apartment, prevailed because the landlord had improperly resorted to forcible self-help eviction, without the benefit of judicial process. In this case, plaintiffs sought a preliminary injunction and an execution for possession to regain the premises. Defendant argues that the court lacks jurisdiction to evict by injunction and that the order was unlawful. This argument is without merit as the Appeals Court has established that a licensee may be removed from premises by preliminary injunction. Beacon Park Assoc. v. Corbett, No. 96-J-693.
2. G.L.c. 186, §15F
Like §14, G. L.c. 186, §15F (“§15F") is not applicable to defendant’s situation in the absence of a landlord-tenant relationship. §15F provides that “if a tenant is removed from the premises or excluded therefrom by the landlord or his agent except pursuant, to a valid court order, the tenant may recover possession or terminate the rental agreement, . . . recover three months’ rent . . .” The express language of §15F assumes the existence of a tenancy by specifically using the words “landlord” and “tenant.” The statute says that the tenant can terminate the rental agreement and recover three months’ rent, all of which implies the existence of a lease and payment of rent by the occupant. Also, if the tenant is removed from the premises pursuant to a valid court order, there is no violation of the statute. For the same reasons defendant is not protected by §14, he may not rely on §15F.
III. VIOLATION OF G.L.c. 184, §18
Count VIII of defendant’s counterclaim alleging violation of G.L.c. 184, §18 (“§18”) must also be dismissed for failure to state a claim upon which relief can be granted. First, defendant alleges that plaintiffs made an entry into the residential premises occupied by him and his family in violation of the statute. The relevant portion of §18 provides as follows: “No person shall make an entry into land or tenements except in cases where his entry is allowed by law, and in such cases he shall not enter by force, but in a peaceable manner.” Even though § 18 does not require a landlord-tenant relationship, it is not applicable to defendant’s situation. In order to violate the statute, the entry must be by force and not allowed by law. As was previously stated, the court granted a preliminary injunction requiring that defendant vacate the premises and later, an execution for possession. The undisputed facts and circumstances of this case do not implicate §18.
Second, defendant alleges that plaintiffs attempted to and did recover possession of the residential premises other than through an action pursuant to G.L.c. 239 or by other proceedings authorized by law. Section 18 provides further that “No person shall attempt to recover possession of land or tenements in any manner other than through an action brought pursuant to chapter two hundred and thirty-nine or such other proceedings authorized by law...” Recovering posses *200 sion under the statute can be accomplished not only through an action brought pursuant to chapter 239, but also through other proceedings authorized by law. As possession was recovered by a proceeding authorized by law, there is no violation of the statute.
IV. BREACH OF CONTRACT
Count X of defendant’s counterclaim is a breach of contract claim based on the termination letter in which defendant was offered $10,000 under specified conditions.[6] In order to prove a breach of contract claim, defendant must establish: 1) an expressed or implied agreement, in writing or oral, 2) a valid consideration, 3) performance or its equivalent by the defendant and breach by the plaintiffs, and 4) damage to the defendant. Massachusetts Practice, Bishop, Vol. 17, §11. Generally, a contract is created when there is an offer and an acceptance. Greany v. McCormick, 273 Mass. 250, 252 (1930). Where the existence of a contract is at issue, the burden is on the complainant to show that it was made. Canney v. New England Tel., 353 Mass. 158, 164 (1967); Massachusetts Practice, Bishop, Vol. 17, §11.
Defendant alleges that the offer contained in the January 7 letter was wrongfully withdrawn before the expiration of the time provided.[7] Generally, an offer can be withdrawn or rejected at any time prior to acceptance. Onanian v. Leggat, 2 Mass.App.Ct. 623, 630 (1974); Zimmerman v. U.S. Fidelity and Guar. Co., 3 Mass. L. Rptr. No. 26 561, 561 (June 26, 1995). Even if the offerer states that the offeree should have a specific time to accept, or states that the offer will remain open for a definite time, the offer is still revocable at the will of the offerer. Once the plaintiffs exercised this power to revoke the offer, the defendant’s power of acceptance is terminated and the offer could not be revived by an attempted acceptance. Zimmerman, 3 Mass. L. Rptr. at 561.
Therefore, the issue is whether there was an acceptance before plaintiffs revoked the offer. If one assumes that the letter was a valid offer, there was no acceptance of the terms of the offer by defendant. Acceptance of an offer may be made in writing or by conduct and an agreement may be indicated by acts and by words. McCormick, 273 Mass. at 253. Defendant has alleged no written or oral agreement. The letter to which defendant refers as a response to the offer does not suggest a desire to accept the offer.[8] Likewise, there is no indication that the offer was accepted by the defendant’s conduct. While defendant contends that he performed one condition in refraining from filing suit against plaintiffs, he fails to allege that he performed the others. An acceptance must comply with the requirements of the offer as to the performance to be rendered. RESTATEMENT (SECOND) OF CONTRACTS §58 (1981); Tierney v. Wellington Carpets Inc., 8 Mass.App.Ct. 237, 240 (1979) (explaining that if an acceptance substantially varies from the terms of the offer, it is ineffective, thus creating no binding agreement).
In addition, defendant seems to be invoking the doctrine of promissory estoppel by alleging that he relied on the offer and citing Miller v. National City Processing Co., No. 96-01066 (Mass.Super.Ct. Dec. 1996). Promissory estoppel permits recovery due to reliance on a promise of future intent. Masso v. United Parcel Serv., 884 F.Sup. 610, 618 (D.Mass.1995). Although the doctrine of promissory estoppel is recognized in Massachusetts, the Supreme Judicial Court eschews use of the doctrine by name. Id. Also, the Court generally follows the RESTATEMENT (SECOND) OF CONTRACTS §90 (1981) which requires that the promisee show reliance on the promise and that he was induced by the promisor to rely on the promise. Id.
If the Court cannot find a valid contract in terms of an offer and an acceptance, the doctrine of promissory estoppel can be used to enforce a promise based on the promisee’s reasonable and detrimental reliance. Miller, No. 96-01066 (citing Rooney v. Paul D. Osborne Desk Co., 38 Mass.App.Ct. 82, 83 (1995)). In Miller, the plaintiff was hired by the corporate defendants with the specific representation that he would oversee certain operations of the business in. Massachusetts and that he would preserve his independence by not having to report back to the local operation. In reliance of these representations, plaintiff relocated to Massachusetts where he was later prevented from doing the job he was hired for and discharged. In this case, defendant has failed to allege such detrimental reliance.[9] Defendant only alleges that because of the offer, he did not commence any legal action against plaintiffs. This sort of reliance was not what the doctrine was intended to protect. If defendant intended to accept the offer by performance of its terms, he obviously failed to fully perform.
As there is no evidence that an acceptance was made prior to plaintiffs’ withdrawal of the offer and in the face of a proper revocation of the offer, there was no contract. In addition, defendant’s allegations are insufficient to support a claim based on promissory estoppel.
ORDER
For the foregoing reasons, it is hereby ORDERED that plaintiffs’ motion to dismiss Counts VI, VII, VIII, and X of defendant’s counterclaim is ALLOWED.

 The court (Fabricant, J.) ruled that plaintiffs have shown that they are likely to succeed on the merits and the defendant was enjoined from failing to vacate the premises.

 The relevant portion of the letter dated January 7, 1997 provides as follows: “Assuming you have vacated 278 Allandale Road by March 7, 1997 (leaving it in a broom clean condition), have completed the Farm’s pesticide reports for 1996, returned to the Farm all of the Farm’s tools, equipment, field reports and other records in your possession, the Farm will pay you on March 8, 1997, the sum of $10,000 (less applicable withholding) in exchange for a general release. This offer, of course, will be revoked in the event you commence any legal action against the Farm or any of its officers or directors.”

 Defendant claims that he has talked to his successor who informed him that he had no need of the house for a residence.

 Although defendant argues that his claim is based on the second type of civil conspiracy, he seems to be using the language of the first one by alleging that plaintiffs together with their employee, John Lee, exercised unusual control over him and his family. The court notes that the pleadings in this case are not sufficient to state a claim under the first type of civil conspiracy. The evidence shows no peculiar power of coercion possessed by the plaintiffs in combination that they would not have had if they were acting independently.

 “The gist of a civil action of this sort is not the conspiracy, but the deceit or fraud causing damage to the [complainant], the combination being charged merely for the purpose of fixing joint liability ..." Aetna, 43 F.3d at 1564 (quoting New England Found. Co. v. Reed., 209 Mass. 556 (1991)).

 See note 2, supra.

 The offer granted defendant until March 7, 1997, but was withdrawn by letter dated February 11, 1997.

 The February 4 letter of the defendant’s attorney stated that he wanted to discuss the circumstances of the defendant’s employment termination and the proposal for him to leave the premises. There was only a request for a meeting to “see if [they] can arrive at a satisfactory resolution

 In the Miller case, when the corporate defendants discharged plaintiff, they offered him compensation of $20,000, contingent upon his promise not to bring a lawsuit, which plaintiff refused. Plaintiff alleged that the money was offered because the defendants determined that he deserved the money as payment for his past work, in addition to compensation that he had already received. Such a scenario created the basis for a claim of unjust enrichment that is not presented by the allegations of this case.