Botsford, J.
This is an action for breach of contract related to work on a public construction project. The case was tried without a jury before me. Set forth below are my findings of fact based on the credible evidence introduced at trial. A discussion of the legal issues follows. For the reasons stated there, I conclude that the plaintiff has proved its claim of contract breach.
Findings of Fact
The plaintiff I&R Mechanical Inc. (I&R) is a mechanical contractor that performs heating, ventilating and air conditioning (HVAC) work on public construction projects. On March 12,1998, I&R filed a sub-bid to do HVAC work on a public construction project for renovations to the East Boston High School in Boston (the high school project). The plans and specifications for the high school project included repairs to the existing chimney as part of the HVAC work to be performed. The project was governed by the public bidding laws, and I&R’s sub-bid was required to comply with G.L.c. 149, §44F. As part of its filed sub-bid, I&R was required to list the companies that I&R proposed to supply labor or materials, including the work involving existing chimney repairs.
Cutter Northern Refractories, Inc. (Cutter Northern) is a refractory contractor engaged in work that involves structures such as chimneys that are subject to temperatures in excess of 1500 degrees Fahrenheit; Cutter Northern fabricates, redesigns, rebuilds and repairs such structures. On March 11, 1998, the day before the high school project sub-bids were due, Keith Price of I&R contacted Brian Lenihan of Cutter Northern to solicit a bid on the chimney repair work.[1] Lenihan is the vice president for construction of Cutter Northern. Price told Lenihan he needed a bid that day for the chimney repair work portion of the HVAC work on the high school project, explained he needed to file such a bid, and faxed to Lenihan a copy of the two pages from the project specifications that concerned the chimney repairs. Price also told Lenihan that Cutter Northern would need to supply the staging for the job. The same day, Lenihan faxed back a response to I&R which stated in part:

Subject: East Boston High School, Chimney Repairs

Cutter Northern Refractories is please to submit our proposal to supply all labor, material and supervision necessary to accomplish the attached scope of work.
Cutter Northern Refractories price for this work: $15,640.00
Payment terms are 30% with purchase order, balance net 30 days.
Cutter Northern will supply all staging necessary.
Price does not include state, local, or federal taxes.
Please call me if you have any questions. Thank you for thinking of Cutter Northern for your refractory needs.
Sincerely,
Brian T. Lenihan
Vice President of Construction
*285 (Emphasis in original.) Attached to this one-page letter was a separate page describing the scope and nature of work that Cutter Northern was offering to perform. Lenihan knew that he was submitting a bid proposal for work on a public high school renovation project, and although Price did not tell him explicitly that this was a public construction project governed by the public bid construction laws, Lenihan acknowledged that he had some experience with public construction projects and with filed sub-bids in particular. I infer that Lenihan knew or understood that the East Boston High School project was a public construction project, and that I&R might well use Cutter Northern’s bid proposal in its filed sub-bid for the HVAC work on the project.[2]
I&R filed its sub-bid for the HVAC work on March 12, 1998. Cutter Northern was included within the bid as the company that would perform the chimney repair work for the listed price of $15,640.00. I&R’s total sub-bid for the work came to $2,130,000.00. I&R did not notify Cutter Northern that it was being included in I&R’s sub-bid.
For reasons not relevant to this case, the City of Boston rejected all the sub-bids on the high school project, and thereafter put the project out to bid again. The new due date for all sub-bids was May 29, 1998.[3]
At some point during the week before May 29, Keith Price of I&R called Brian Lenihan of Cutter Northern and asked if Cutter Northern’s bid for the chimney repair work would be the same as before. Lenihan responded that so long as there were no changes to the work at issue, the quoted figures would remain the same. Lenihan had not inspected the East Boston High School site at that time.[4]
On May 28, 1998 — around the same time as his May conversation with Keith Price — Lenihan also submitted a written proposal concerning the chimney repair work for the high school project to another HVAC subcontractor called Enterprise Equipment Co., Inc. Lenihan listed in the Enterprise proposal the same price of $15,640.00 for the work, although the proposal did not include a condition about payment of 30% of the price “with purchase order” and was silent on the subject of staging.[5] As was true of the written bid proposal to I&R, however, the written proposal to Enterprise Equipment did not contain a condition that it was subject to a site inspection, and Lenihan did not state orally to Enterprise Equipment that the proposal was conditioned on such an inspection.
Neither Brian Lenihan nor any other person associated with Cutter Northern had inspected the East Boston High School site before submitting the proposal to I&R in March 1998, or before confirming the proposal in May 1998. Keith Price of I&R also had not inspected the site by the time of the second filed sub-bid on May 29, 1998. Before each of the due dates for the sub-bids, there had been two scheduled dates for subcontractors to visit the site, but Cutter Northern was not made aware of these dates.
On May 29, 1998, I&R resubmitted its sub-bid for the HVAC work at a lower total price of $2,064,000.00. I&R again included Cutter Northern as the entity that would perform the required chimney repair work at the price of $15,640.00.
I&R was awarded the HVAC subcontract on the high school project. InAugust 1998, I&R sent Cutter Northern a proposed contract form for the chimney repair work. Cutter Northern did not sign the contract. Keith Price attempted to contact Lenihan, and finally reached him some time in the first half of 1999. There ensued a number of communications between Keith Price and Lenihan, between Ingrid Price, the president of I&R, and Lenihan, and thereafter between Ingrid Price and Thomas Cutter, the principal of Cutter Northern. The end result was that Cutter Northern informed I&R that it would not perform the chimney repair work at the price of $15,640.00. It appears the reason Cutter Northern took this position was based on its inspection of the East Boston High School site in the fall of 1998, after I&R had been awarded the contract. The inspection revealed that the chimney stack was located at the center of the high school building on top of a rubber roof and was not accessible directly from the ground, which meant, among other things, that access would be difficult and a significantly increased amount of staging would be necessary to reach the area where the work was to be performed.
I&R determined that there was no way to increase the price for the chimney repair work in its subcontract with Peabody Construction Company. I&R was also aware that the subcontract prescribed liquidated damages of $1000.00 per day for every day that it was late in completing its subcontract. Cutter Northern sought to find for I&R another company that would perform the required chimney repair work. Cutter Northern recommended Boston Chimney and Tower Company (Boston Chimney). Ultimately Boston Chimney performed the chimney repair work for the I&R price of $50,431.00.
I&R relied on Cutter Northern’s bid of $15,640.00 in preparing and submitting its filed sub-bid on the high school project.[6]
Discussion
I&R’s filed sub-bid for the high school project was controlled by G.L.c. 149, §44F, part of the statutory scheme that governs public bid construction projects. That section prescribes a form for filed sub-bids that includes a list of all companies furnishing labor or materials in connection with the work called for in the contract specifications. Section 44F also provides, with respect to this list, that if the sub-bidder “is awarded the contract, [the listed companies] will be used for the work indicated at the amounts stated, if *286 satisfactory to the awarding authority.” §44F(2)(F). Pursuant to §44F, once I&R listed Cutter Northern in its filed sub-bid for the HVAC work on the East Boston High School project, it was bound to provide the chimney repair work at the price listed in its sub-bid, which was the $15,640.00 that Cutter Northern had submitted.
“ ‘An offer which the offeror should reasonably expect to induce action or forbearance of a substantial character on the part of the offeree before acceptance and which does induce such action or forbearance is binding as an option contract to the extent necessary to avoid injustice.’ . . . When a promise is enforceable in whole or in part by virtue of reliance, it is a ‘contract,’ and it is enforceable pursuant to a ‘traditional contract theory’ antedating the modern doctrine of consideration.” Loranger Cons. Corp. v. E.F Hauserman Co., 376 Mass. 757, 760-61 (1978) (citations omitted).[7] See Rhode Island Hosp. Nat’l. Bank v. Varadian, 419 Mass. 841, 849-50 (1995).
Loranger governs here. As was true of the plaintiff contractor in that case, I&R received a proposal from Cutter Northern to perform a discrete portion of the work for a public construction project on which I&R was bidding. I&R accepted and relied on the proposal, and by virtue of that reliance, is entitled to enforce its bárgain, or contract, with Cutter Northern. See David J. Tierney, Jr., Inc. v. T. Wellington Carpets, Inc., 8 Mass.App.Ct. 237, 238-39 (1979) (plaintiff general contractor that solicited bid from defendant subcontractor for work on public high school renovation project entitled to the benefit of the subcontractor’s bid price; court upheld jury determination that the subcontractor had agreed to the price and therefore a contract was formed, despite the subcontractor’s refusal to sign a written contract).
Cutter Northern argues that there can be no finding of an enforceable contract in this case because Lenihan, on its behalf, made the bid proposal subject to the condition of a site inspection before it was going to commit to do the work. The factual findings above, however, do not support the claim: I have determined that there was no such condition set by Cutter Northern.
Cutter Northern further asserts the absence of an enforceable contract on the grounds that its offer was conditioned on I&R’s paying 30 percent of the contract amount “with purchase order.” The argument appears to be that I&R’s failure to tender the payment when it sent the proposed subcontract to Cutter Northern in August 1998 signified not an acceptance of Cutter Northern’s offer but a counter-offer that Cutter Northern never agreed to. This argument, too, must be rejected. Cutter Northern’s offer stated that ”[p]ayment terms are 30% with purchase order, balance net 30 days.” This is not language specifying a mode of acceptance for I&R, but rather a term of the offer. Compare David J. Tierney, Jr., Inc. v. T. Wellington Carpets, Inc., supra, 8 Mass.App.Ct. at 240-41. The evidence makes plain that I&R had not issued a purchase order, and thus had not triggered any obligation to pay 30% of the price, before Cutter Northern announced its refused to do the work in question. Accordingly, there was no showing that I&R had rejected the payment term Cutter Northern had set out.[8] This repudiation excused any obligation of I&R to tender any part of the price. See, e.g., Cavanagh v. Cavanagh, 33 Mass.App.Ct. 240, 243-44 (1992).
Cutter Northern chooses to deem the subcontract proffered by I&R in August 1998 as a “purchase order,” but as these terms are commonly used and understood, a purchase order and a contract or subcontract Eire not the same thing. If Cutter Northern wished to condition its performance on receipt of 30% of the contract price at such time as it signed a subcontract, it could have so stated in its proposal, but did not. Moreover, even if one were to consider the term “purchase order” as including, in the circumstances, a subcontract, the nature of such a subcontract is that to be effective, it must be signed. This one was not signed. Rather, Cutter Northern announced after it received the unexecuted subcontract that it would not perform. Again, the repudiation excused any failure on the part of I&R immediately to tender 30% of the purchase price.
Since I&R had an enforceable agreement with Cutter Northern concerning the chimney repair work, and since Cutter Northern breached that agreement by refusing to perform, I&R is entitled to damages. The contract damages it seeks come to $34,791.00 — the difference between the price of $15,640.00 promised by Cutter Northern to do the work, and the price of $50,431.00 ultimately paid to Boston Chimney. This is the appropriate measure of damages for the breach. See, e.g., David J. Tierney, Jr., Inc. v. T. Wellington Carpets, Inc., supra, 8 Mass.App.Ct. at 239. See also Loranger Const. Corp. v. E.F. Hauserman Co., supra, 376 Mass. at 758.
In addition to its contract claim, I&R has a claim for violation of G.L.c. 93A, §11. As the previous discussion indicates, I&R has proved there was a breach of contract. A breach of contract, without more, however, does not constitute unfair or deceptive conduct within the scope of §11. See, e.g., Massachusetts Employers Ins. Exchange v. Propac-Mass, Inc., 420 Mass. 39, 43 (1995). There is nothing in this case that establishes the type of misrepresentation or of coercive or similar conduct associated with the breach that might warrant a finding of unfair or deceptive action by Cutter Northern. See Atkinson v. Rosenthal, 33 Mass.App.Ct. 219, 226 (1992). Compare Massachusetts Employers Ins. Exchange, supra, 420 Mass. at 42-43.
ORDER
For the foregoing reasons, judgment is to enter as follows:
*287 1. On Count I of the complaint, in favor of the plaintiff I&R Mechanical, Inc., in the amount of $34,791.00, plus interest and costs; and
2. On Count II of the complaint, in favor of the defendant Cutter Northern Refractories, Inc., and dismissing that count.

 Price also solicited bids for the chimney repair work from contractors, but it is not clear how many solicitations he made or how many responses he received.

 Lenihan testified he told Keith Price in their March 11, 1998, conversation that his bid was subject to an inspection of the high school work site. Lenihan also stated, however, that he did not ask anything during this conversation about the location of the chimney stack or how to arrange for a site visit, and that he prepared the bid proposal on the basis of certain assumptions he made on his own about the location of the chimney stack. It is also clear that he did not include a site inspection as one of the terms or conditions of his written bid proposal. Keith Price testified that Lenihan never told him that a site visit was a condition of Cutter Northern’s bid. I credit Price’s testimony. While it may be that Lenihan mentioned a site inspection to Price on March 11, in view of all the evidence presented, I do not find that he made the site inspection a formal condition of Cutter Northern’s bid proposal.

 Although there were some new addenda to the contract between the city and the general contractor for the project, Peabody Construction Co., none of the new provisions affected the HVAC component of the high school project.

 Lenihan testified at trial that in his May 1998 conversation with Keith Price he said everything was subject to a site visit, but at his deposition in June of 2000, Lenihan said he did not recall whether or not he had said the bid was subject to an inspection of the site in the May conversation. Keith Price testified that Lenihan did not state that a site inspection was a condition when the two men talked about Cutter Northern’s bid proposal in May. I do not find that Lenihan mentioned a site visit as a condition of Cutter Northern’s continued bid proposal in May 1998.

 It appears that although Cutter Northern's bid proposal to Enterprise Equipment did not expressly state that Cutter Northern would supply all the necessary staging (in contrast to the bid proposal submitted to I&R), Cutter Northern contemplated that it would supply the work staging under both the Enterprise Equipment and I&R proposals. (See Exhibit 16 [Lenihan Rule 30(b)(6) deposition], p. 48.)

 It appears that by letter dated April 7, 1998, Boston Chimney may have submitted to Keith Price at I&R a bid proposal to perform the chimney repair work at the price of $50,431.00. (Trial exhibit 15.) Keith Price denied having received this written proposal, although a copy of it was produced in discovery by I&R, from its files. It is true, however, that Price’s denial of knowledge of the proposal is consistent with the contents of a memorandum dated April 22, 1999 (trial exhibit 11), that Price sent to Boston Chimney concerning its initial 1999 offer to I&R to do the work for $53,193.00. (This offer or proposal was submitted to I&R after Cutter Northern had refused to do the work.) I do not need to resolve the factual question whether I&R did in fact receive Boston Chimney’s bid proposal in 1998 for $50,431.00, because even if I&R did, there is no evidence that I&R was or should have been put on notice thereby that Cutter Northern’s proposal was unreasonably low. The uncontradicted evidence was that I&R does not work in the refractory field, and that Keith Price had not visited the East Boston High School site to see the location of the chimney stack at the time he communicated with Cutter Northern’s Lenihan in March and May of 1998. More significantly, nothing was submitted concerning what other bids for the chimney' repair work I&R might have received. Accordingly, I do not find that I&R’s reliance on Cutter Northern’s bid was unreasonable.

 In horanger, the plaintiff was a contractor preparing a bid for construction at a public community college, and the defendant was a subcontractor that had submitted to the plaintiff a “quotation” or “estimate” for supplying and installing movable metal partitions. The plaintiff used this quotation in preparing its bid, and was awarded the general contract. When the plaintiff contractor sent the defendant an unsigned subcontract form based on the latter’s previously, submitted “estimate,” the defendant rejected it and refused to do the work. The plaintiff engaged another company at a higher price, and sued the defendant for the difference, Loranger Const. Corp. v. E.F. Hauserman Co., 376 Mass. 757, 759 (1978). The court upheld the award of damages to the plaintiff, concluding that its reliance on the defendant’s estimate in submitting its bid for the general contract supplied the necessary consideration for a contract between the parties. See id. at 763.

 It is true that since the proposal advanced by Cutter Northern dealt with the provision of labor and materials, not the sale of goods,-the concept of a purchase order seems out of place; this was a point emphasized by Keith Price in his testimony. Nevertheless, Cutter Northern, which included this term in its proposal, never inquired of I&R about a purchase order or payment allegedly due before Cutter Northern announced its refusal to perform, and certainly never suggested that its reason for not proceeding with the work was that it had not been offered 30% of the price at the outset. The evidence suggests that Cutter Northern essentially waived this term of its offer.