MARY SERREZE & others[1] *vs.* YWCA OF WESTERN
MASSACHUSETTS, INC.

No. 89-P-1084.

Hampshire. January 11, 1991. - June 5, 1991.

Present: WARNER, C.J., BROWN, & GREENBERG, JJ.

*Housing. Transitional Living. Landlord and Tenant,* Eviction, Quiet enjoyment. *Administrative Law,* Judicial review. *Civil Rights,* Availability of remedy, Coercion.

Plaintiffs residing in "chapter 707 project based units" (St. 1966, c. 707) operated by the YWCA were "occupants" of "residential premises" entitled to the protections and remedies of G. L. c. 186, § 14, prohibiting self-help eviction by a lessor or landlord. [642-645]

Summary judgment was correctly entered for a landlord on a claim for violation of civil rights brought under G. L. c. 12, § 11I, by occupants of residential premises, where there was no evidence of the necessary element of threats, intimidation or coercion in the landlord's resort, in the circumstances, to self-help eviction. [645]

CIVIL ACTION commenced in the Superior Court Department on May 12, 1989.

The case was heard by *Charles R. Alberti,* J., on a motion for summary judgment.

*Katherine Callaghan* for the plaintiffs.

*Elaine M. Reall* for the defendant.

GREENBERG, J. The question posed by this case is whether three women residing in "chapter 707 project based units" (see St. 1966, c. 707) operated by the Springfield YWCA are statutorily protected from self-help eviction. We conclude that they are and that the trial judge's dismissal of part of their claims was erroneous.

---

[1] Angela Anderson and Jane Doe. Jane Doe is unable to bring this suit in her own name because her former abuser continues to make efforts to locate her.

The plaintiffs, Mary Serreze, Angela Anderson and Jane Doe, filed suit against the YWCA of Western Massachusetts doing business as Springfield YWCA (YWCA), alleging violations of G. L. c. 186, §§ 14[2] and 15F,[3] as well as the State Civil Rights Act, G. L. c. 12, § 11I, claiming, among other things, that when they were locked out of their apartments on May 12, 1989, they were unlawfully evicted without judicial process.[4] They sought preliminary injunctive relief, which was denied, and damages.

The YWCA moved to dismiss the plaintiffs' complaint on the ground that the pleadings and supporting documents established that the plaintiffs' relationship to the YWCA was that of voluntary social service clients and not tenants. After a hearing, a judge in the Superior Court granted the YWCA's motion to dismiss and judgment entered accordingly.[5]

1. *The "Transitional Living Program."* We summarize the facts set forth in the pleadings in the light most favorable to the plaintiffs. *Yankubowicz v. Paramount Pictures Corp.,*

---

[2]General Laws c. 186, § 14, as amended by St. 1984, c. 189, § 146, provides in pertinent part: "Any lessor or landlord who directly or indirectly interferes with the quiet enjoyment of any residential premises by the occupant, or who attempts to regain possession of such premises by force without benefit of judicial process . . . [is subject to statutory remedies]."

[3]General Laws c. 186, § 15F, inserted by St. 1974, c. 575, § 2, provides as follows: "If a tenant is removed from the premises or excluded therefrom by the landlord or his agent except pursuant to a valid court order . . . [a statutory remedy is available]."

[4]Because the plaintiffs have not shown through the record or their briefs how G. L. c. 186, § 18, is implicated, we do not consider their claim under that section. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). *Suga v. Maum*, 29 Mass. App. Ct. 733, 736 n.5 (1991).

[5]Since the trial judge considered documents beyond the pleadings (affidavits, photographs of the premises, and various agreements), this motion was treated as one for summary judgment under Mass.R.Civ.P. 56, 365 Mass. 824 (1974). Mass.R.Civ.P. 12(b), 365 Mass. 754 (1974). See *Held v. Zamparelli*, 13 Mass. App. Ct. 957, 958 (1982); *Azzi v. Western Elec. Co.*, 19 Mass. App. Ct. 406, 407 n.3 (1985). In their brief, the plaintiffs request that the judgment of the Superior Court be reversed and the case remanded for a trial on the merits; however, at argument the parties agreed that the facts necessary for disposition of all claims are contained in the record.

404 Mass. 624, 626 (1989). The YWCA leased units of a multi-unit apartment building located on South Street in Northampton to facilitate its "Transitional Living Program" (TLP) for battered women and their children. The TLP program, a blend of housing and social services, is unique in that it is designed not to provide residential therapy for mental health patients or "emergency" housing for the homeless, but rather comprehensive "second stage" support for selected families seeking transition to a life independent of their former abusers. The TLP program furnished each selected participant with her own apartment, subsidized through the Department of Community Affairs (DCA),[6] and social services, funded through the Department of Social Services (DSS) and provided by the YWCA. In return for the services received, the women were expected either to work or to attend school and to participate in regularly scheduled self-help counseling and vocational guidance sessions. The program was run largely by two YWCA employees, a program coordinator responsible for counseling, advocacy and general case management, and a children's coordinator responsible for monitoring the needs of those women with minor children.

2. *The dispute.* Toward the end of January, 1989, the controversy which spawned this litigation erupted between the YWCA and the plaintiffs. The plaintiffs Anderson and Doe, unhappy with the program coordinator's purported insensitivity to their case management, lodged a complaint with the executive director of the YWCA. A short time later, in a letter dated March 12, 1989, the three women articulated specific grievances against the program coordinator, including charges of breach of confidentiality, inaccessibility, lack of knowledge as to area resources, and an inability properly to facilitate support group sessions.[7] Tensions mounted and culminated in Doe's refusal to attend the individual and

---

[6]Each of the program participants paid a monthly rent of twenty-five percent of her income pursuant to 760 Code Mass. Regs. § 7.02 (1986), the regulation governing the determination of rents in State-aided public housing.

[7]Anderson and Doe also alleged in the complaint that a short time after the YWCA hired a child coordinator, on March 21, 1989, they believed

group counseling sessions. Serreze joined the boycott shortly thereafter.

On March 29, 1989, the program coordinator, citing as grounds for termination their "voluntary" failure to participate in support services, issued Doe and Serreze thirty-day notices to vacate their apartments by April 30, 1989.[8] Concerned that the rift would jeopardize future funding for an otherwise valuable program, the YWCA executive director met with the plaintiffs on at least one occasion, on April 5, 1989, to discuss their complaints. At that meeting, the director agreed to investigate the plaintiffs' grievances, but informed them that if they failed to vacate their apartments as required in the notices, she would have the locks changed. She added that this decision was not appealable.

Anticipating a moratorium on the YWCA's ouster notices, the three women, through counsel, requested a fair hearing and conciliation conference through DSS. See 110 Code Mass. Regs. §§ 10.06, 10.08(2), 10.09 (1988). On May 12, 1989, during the DSS conciliation conference, and for reasons not entirely developed in the record, the YWCA representatives walked out of the meeting and changed the locks on the plaintiffs' apartment doors.

3. *Plaintiffs' claims under G. L. c. 186.* The plaintiffs contend that the YWCA, in barring them from their apartments without judicial process, violated G. L. c. 186, §§ 14 and 15F. The YWCA counters that plaintiffs were not tenants, but clients in a temporary treatment program, and, as such, licensees not statutorily protected under landlord-tenant law.

We recognize that the regulatory scheme underlying the transitional housing program suggests an intention to "depart from traditional concepts of the landlord-tenant relation-

---

they "witnessed the Coordinator physically and psychologically abusing a child belonging to one of the other residents."

[8] In a parallel development, the program coordinator had sent Anderson a letter on March 8, 1989, ordering her out of her apartment due to her failure to attend regular meetings and because of a partial arrearage on her security deposit. On April 10, 1989, Anderson was notified that she had until April 19, 1989, to vacate her unit.

ship." *Spence* v. *O'Brien*, 15 Mass. App. Ct. 489, 496 (1983). However, the existence of a classic "tenancy" between these parties is not dispositive, for G. L. c. 186, § 14, does not require such a relationship for statutory protections to attach. Because of the general disapproval of self-help evictions, the statute was drafted to prohibit a "lessor *or* landlord" from "directly or indirectly interfering with the quiet enjoyment of *any* residential premises by the *occupant*, or . . . [from attempting] to regain possession of such premises by force without benefit of judicial process" (emphasis supplied). Note 2, *supra*. As self-help eviction would constitute a breach of the covenant of quiet enjoyment under this provision, *Doe* v. *Boston*, 262 Mass. 458, 461 (1928); *Shindler* v. *Milden*, 282 Mass. 32 (1933); *Simon* v. *Solomon*, 385 Mass. 91, 102 (1982), the plaintiffs, as "occupants" of "residential premises," qualify for its protections and remedies.[9]

The YWCA, like many landlords before them, insists that the financial integrity of this program or other like programs will be compromised each time a disruptive resident must be ousted through summary process. We recognize in this case the legitimate interests of the YWCA in preserving the viability of its TLP program, see *City Wide Assocs.* v. *Penfield*, 409 Mass. 140, 142 (1991), and we are conscious of the potential impediments involved. See *Tedford* v. *Massachusetts Hous. Fin. Agency*, 390 Mass. 688 (1984). However, it is not a characteristic feature of summary process law that the

---

[9]Because we hold that the plaintiffs are entitled to remedies afforded by G. L. c. 186, § 14, we need not reach the more difficult question whether they were "tenants" for the purposes of G. L. c. 186, § 15F. However, we note that remedial statutes, such as G. L. c. 186, § 15F, are to be liberally construed to effectuate the apparent legislative purpose. *Deas* v. *Dempsey*, 403 Mass. 468, 470 (1988). Any ambiguities are to be resolved toward the same end. *Boston* v. *Hospital Transp. Servs., Inc.*, 6 Mass. App. Ct. 198, 201-202 (1978). Following these principles, in construing the term "tenant," courts have looked beyond rigid common law definitions to effectuate an appropriate remedy. See, e.g., *Brown* v. *Guerrier*, 390 Mass. 631 (1983); *Arsenault* v. *Chicopee Hous. Authy.*, 15 Mass. App. Ct. 939, 941 (1983).

landlord who seeks possession is without speedy remedy.[10] The YWCA has offered nothing to establish what it is about the summary procedure under G. L. c. 239, §§ 1 et seq., which might justify treating the plaintiffs differently.

The mere fact that the TLP program is a condition of the occupancy agreement, and the services provided inherently restorative, should not preclude the application of G. L. c. 186, § 14. In implementing this program, the YWCA has provided a safe place for participants whose survival depends upon controlling their own habitat. The plaintiffs sought refuge from their former households because the provisions of the abuse prevention statute, G. L. c. 209A, could not effectively "create[] a haven for [them] in which no further abuse need be feared. . . ." *Commonwealth* v. *Gordon*, 407 Mass. 340, 347 (1990). TLP participants are capable of independent living,[11] and have been furnished with the means to secure themselves and their children. Under the agreements, they reside in an apartment and pay for the exclusive right of possession and control. To deny such program participants some form of predeprivation process may only perpetuate the cycle of temporary shelter and dislocation. Where, as here, the administrative process has stumbled, the courts, as "ultimate protectors of constitutional rights," *Lyons* v. *Labor Relations Commn.*, 397 Mass. 498, 502 (1986), quoting from *Chicago Teachers Local 1* v. *Hudson*, 475 U.S. 292, 307

---

[10]Unlike several States in which anti-eviction statutes prohibit the removal of any residential occupant except for cause, Massachusetts continues to permit summary eviction of tenants-at-will. See and compare, the New Jersey Anti-Eviction Act, 1974 N.J. Laws c. 49, arising from a recognition of the severe housing shortage in that State. In Massachusetts, the burden remains on a tenant to establish a reasonable basis to stave off eviction proceedings. G. L. c. 239, §§ 1 et seq.

[11]In this way, these women are very different from those individuals housed in programs funded through the Department of Mental Health. See 760 Code Mass. Regs. § 39.01(1) (1988), which specifically excludes mental health programs and shelters from the Transitional Housing Program. The plaintiffs have manifested no behavioral disorders justifying substantive limitations on their living accommodations, nor has there been any allegation that the plaintiffs substantially interfered with the rights of other occupants.

n.20 (1986), may apply remedial statutes such as G. L. c. 186, § 14.[12]

4. *The civil rights claims.* Although we conclude that the YWCA interfered with the plaintiffs' protected interest in the continuation of their subsidized occupancy, we do not think its behavior rose to the level of a civil rights violation under G. L. c. 12, § 11I. There is no evidence that the YWCA ever threatened, intimidated, or coerced the plaintiffs; thus, one of the elements necessary for a statutory violation is lacking. *Benevolent & Protective Order of Elks, Lodge No. 65* v. *Planning Bd. of Lawrence*, 403 Mass. 531, 559 (1988). Beyond unlawful coercion, the Civil Rights Act requires proof of "measures directed toward a particular individual or class of persons . . ." in order to survive a motion to dismiss for failure to state a claim. See *Bally* v. *Northeastern Univ.*, 403 Mass. 713, 718-719 (1989), and cases cited. In this instance, the YWCA's misconstruction of their regulatory and statutory relationship with the plaintiffs was indiscriminate and likely borne of genuine uncertainty. The Superior Court judge properly granted summary judgment for the YWCA on the plaintiffs' civil rights claim.

5. *Disposition.* So much of the judgment in favor of the YWCA as pertains to the G. L. c. 186, § 14, claim is vacated and the case is remanded to the Superior Court for a hearing to assess reasonable attorney's fees of the plaintiffs to be added to an award for each of them under the formula provided in § 14 of twenty-five dollars plus three months rent each, or eighty-eight dollars for Mary Serreze; seventy-six dollars for Angela Anderson; and one hundred dollars for Jane Doe.[13] We decline to award appellate fees and costs. *Yorke Mgmt.* v. *Castro*, 406 Mass. 17, 19 (1989). The judg-

---

[12]In our case the plaintiffs represent that they have found other housing accommodations and now seek only the damages remedy in § 14.

[13]We note that this case differs from *Simon* v. *Solomon*, 385 Mass. at 110 n.13. Here, the plaintiffs' rent, or twenty-five percent of their income, represents the contract rent.

ment with respect to the plaintiffs' claim under the Massachusetts Civil Rights Act is affirmed.

*So ordered.*