UNITED COMPANY *vs.* GEORGE MEEHAN
(and a companion case[1]).

No. 97-P-418.

Suffolk. December 18, 1998. - July 16, 1999.

Present: KASS, DREBEN, & SPINA, JJ.

*Summary Process,* Appeal. *Landlord and Tenant,* Eviction, Waiver, Guest, Quiet enjoyment. *Statute.* Construction. *Words,* "Occupant."

A landlord is not required to bring a summary process action to evict a person whose status is only as a guest or visitor of a tenant, the remedy being a summary process action against the tenant. [318-320]

A Housing Court judge correctly concluded that a landlord acted reasonably, in the circumstances, in entering a tenant's apartment in the tenant's absence and escorting out the tenant's disruptive guest, and the landlord's action did not constitute interference with the tenant's quiet enjoyment. [320]

Evidence in a summary process proceeding supported the judge's conclusion that the landlord had not by its conduct waived any breach of the lease by the tenant, whom the landlord sought to evict from the premises. [320]

A judge of the Housing Court did not abuse his discretion in ordering forfeiture of a lease after finding that the tenant's offer to comply with the judge's order of conditions (to avoid forfeiture) came too late. [320-321]

SUMMARY PROCESS. Complaint filed in the City of Boston Division of the Housing Court Department on June 14, 1995.

SUMMARY PROCESS. Complaint filed in the Boston Municipal Court Department on August 28, 1995.

After consolidation in the Housing Court Department, the cases were heard by *Jeffrey M. Winik,* J., and motions for entry of final judgment and for reconsideration were heard by him.

*A. Joseph Ross* for George Meehan.

*David A. Grossman* for Valerie Shaw.

*Shawn F.S. McCormick* for United Company.

DREBEN, J. United Company (United), the owner of a

_____
[1]United Company *vs.* Valerie Shaw.

residential development in Boston known as Church Park, brought two summary process actions which were consolidated for trial. One was an action against George Meehan, a tenant under lease since 1988, and the second was against Valerie Shaw, a frequent visitor to Meehan's apartment.

After a jury-waived trial, a judge of the Housing Court issued careful and detailed findings, ordered that Meehan's tenancy not be forfeited if he complied with certain conditions — in effect giving Meehan an opportunity to request, in accordance with the rules and regulations of Church Park, that Shaw become an approved tenant[2] — and, if Meehan failed to comply, ordered the entry of final judgment for United for possession and for any unpaid rent. Meehan did not comply, and judgment entered against him in accordance with the order. The judge dismissed the summary process complaint against Shaw and ordered judgment be entered for her. He also dismissed Shaw's "counterclaims I through VII,"[3] and ordered judgment for United. Both Shaw and Meehan have appealed.

A somewhat lengthy history of the tenancy, taken from the findings of the trial judge, may be helpful. These facts, contrary to the claims of Meehan and Shaw, are fully supported by the evidence. Meehan is a merchant seaman and often is away for months at a time. He was the sole tenant listed on each of three leases. The rules and regulations of Church Park, incorporated

---

[2] The order used the word "tenant," while the rules and regulations, incorporated into the tenants' leases, speak of "approved occupant." Nothing, however, turns on this distinction.

[3] Prior to trial the judge dismissed the counterclaims, other than those relating to unlawful eviction, as being filed too late. On the first day of trial, on Shaw's reassertion of the disallowed claims, the judge stated that if he were to find as an initial matter that Shaw was a tenant and that the landlord was otherwise entitled to recover possession, what he "would likely do" would be to allow Shaw to amend to add her affirmative defenses. In his subsequent findings and order, he stated that he had bifurcated Shaw's trial and did not permit her to present affirmative defenses or counterclaims, explaining that she would only be entitled to assert them if he found that she was a tenant or approved occupant. Some of the counterclaims may have been viable without consideration of her status so that she should have been allowed to pursue them. See *Shea* v. *Neponset River Marine & Sportfishing, Inc.*, 14 Mass. App. Ct. 121, 127 & n.7 (1982); *Mulvanity* v. *Pelletier*, 40 Mass. App. Ct. 106, 109 (1996). Since neither the summary process complaints nor the answers thereto are included in the appendix, the exact nature of the counterclaims is not available to us. Shaw has not presented us with a record which enables us to review the propriety of the dismissal of her counterclaims. See *Kunen* v. *First Agricultural Natl. Bank*, 6 Mass. App. Ct. 684 (1978).

in tenant leases and approved by the Massachusetts Housing Finance Agency,[4] provide that only persons who sign leases or whose names appear on a lease as an "approved occupant" are permitted to reside at Church Park. A tenant must file an application to request approved occupancy status for any person who resides (sleeps at the premises) for more than fourteen days per year.

Meehan's tenancy was not uneventful from the point of view of United. In September, 1990, Meehan was informed by letter that Shaw could not stay at the premises for more than fourteen days without applying to become a resident. In 1991 and 1992, security guards received complaints from neighbors concerning noise emanating from Meehan's apartment from his guests; Shaw was involved in these incidents. More letters were sent to Meehan objecting to his unapproved guests, and, on May 1, 1992, United sent Meehan a notice to quit on the grounds that he had allowed unapproved persons to reside at his premises in violation of the lease. To protect his tenancy, Meehan agreed with John Bloom, the then property manager, that he would not allow Shaw to occupy the premises, and Bloom saw Meehan help Shaw move from Church Park. Meehan requested that the central locks be changed so that Shaw would be unable to enter the development.

In July, 1992, Bloom, after receiving complaints, found a man and Shaw on the premises. The man told Bloom they had come to clean the apartment while Meehan was away. In October, while at sea, Meehan wrote Bloom that Shaw could enter the premises, but Bloom interpreted the letter, as did the judge, to authorize entry only for a limited purpose (mail and watering plants). Subsequent incidents arose because of Shaw's presence in the apartment. After sending a notice to quit, United, on July 13, 1993, served Meehan with a summary process complaint based upon the presence of unauthorized persons residing on the premises. Again, an agreement was reached, Meehan informing Bloom that he would no longer allow his guests to stay. A written agreement for judgment provided that

---

[4]The former property manager of Church Park (John Bloom) testified that the owner receives a subsidy from Massachusetts Housing Finance Agency. Pursuant to a regulatory agreement, one-third of the apartments have to be subsidized, and, when a tenant receives a rent subsidy based on income, the income of any approved resident must be included in the rent subsidy calculation. Meehan received a rent subsidy during the first two of his three leases.

Meehan would not create or allow noisy or otherwise offensive use of the premises. Again, Meehan authorized United to change the central locks to Church Park so that Shaw would not be able to enter. On September 22, 1993, the locks were changed, and on that day, in Bloom's presence, Meehan told Shaw that she had to leave the premises.

Bloom left in the spring of 1994, and the subsequent manager, William Fieg, first heard of Shaw on June 23, 1994, when he received a report of a neighbor's complaint of screams coming from Meehan's apartment. The report (admitted to show Fieg's state of mind) indicated that Meehan had told security guards that he was the only person on the lease and that he wanted Shaw to vacate the apartment, and, as he wanted to leave, he had asked the guards to stay while Shaw packed and then to lock the apartment after she left.

Later that summer, Meehan went to sea. In August, he sent a cable stating that Shaw could enter the apartment, but the cable did not authorize Shaw to live at the premises. In September, Fieg learned that she was living there. Aware that Meehan had agreed with Bloom that Shaw would not be allowed in the apartment and relying on the report that Meehan had asked Shaw to leave in June, Fieg directed security to escort Shaw from the premises. She argued, but eventually left, and when she tried to return over the next two days she was again twice escorted from the property. Knowing that Meehan was away, Fieg ordered the locks changed.

Meehan called Fieg in October, 1994, asking him to acknowledge that Shaw was a resident, but was told that, given the prior incidents, it was unlikely that Shaw would qualify as an approved tenant. Meehan called again in December and said he would not pay rent unless United would permit Shaw to live at the premises while he was at sea. Fieg would not agree, and Meehan failed to pay rent from November, 1994, to April, 1995, when, pursuant to court order, he made a payment. United sent Meehan another letter on February 3, 1995, informing him that Shaw had been seen on the premises and that her continued presence would constitute a violation of the lease. Meehan subsequently received a notice to quit for nonpayment of rent and the present summary process actions were commenced on June 14, 1995, and August 28, 1995.

1. *Action against Shaw.* Based on the foregoing findings, the judge concluded that Shaw was never a tenant, a cotenant, an

approved occupant, or a permanent resident of Meehan's premises. She was, he found, at best a guest. He also concluded that United by its actions never waived its rights under the lease. It never executed a lease with her, she never paid rent, and, to United's knowledge, she was only a frequent visitor. He ruled that the present action against her was not to recover possession of the premises but rather to remove her personally from the premises. Accordingly, since summary process is an action to recover possession, United's action was dismissed as were Shaw's counterclaims. See note 3, *supra.*

We agree that a landlord need not bring a summary process action against a person whose status is only as a guest or visitor of a tenant. Although, as Shaw points out, the word "occupant" in G. L. c. 186, § 14, and c. 239, § 8A, has been liberally construed, see, e.g., *Serreze* v. *YWCA of Western Mass., Inc.*, 30 Mass. App. Ct. 639, 643-644 (1991); *Hodge* v. *Klug*, 33 Mass. App. Ct. 746, 754 (1992), in each of those cases there was no question that possession was in the occupant and the original occupancy was with the permission of the landlord. In *Serreze*, the occupants were women who had been provided with apartments under a transitional living program. In *Hodge*, the occupant was a tenant at sufferance (a holdover tenant at will). See *Attorney Gen.* v. *Dime Sav. Bank*, 413 Mass. 284, 286 (1992) (occupants were mortgagors and holdover tenants).

A summary process action under G. L. c. 239 is an action to recover possession. Thus the term "occupant" in G. L. c. 239, § 8A, set forth in relevant part in the margin,[5] must derive its meaning in light of the purpose of obtaining possession. To consider a guest or a visitor as having possession of the premises does not comport with the meaning of the statutory term "possession." Removing a guest or visitor of a tenant does not effect recovery of possession. Action against the tenant is needed.

---

[5]General Laws c. 239, § 8A, in relevant part provides:

"In any action under this chapter to recover possession of any premises rented or leased for dwelling purposes, brought pursuant to a notice to quit for nonpayment of rent, or where the tenancy has been terminated without fault of the tenant or occupant, the tenant or occupant shall be entitled to raise, by defense or counterclaim, any claim against the plaintiff relating to or arising out of such property, rental, tenancy, or occupancy for breach of warranty, for a breach of any material provision of the rental agreement, or for a violation of any other law."

Moreover, to require a landlord to bring summary process against a person having only the status of a guest or a visitor of a tenant would impose an enormous burden, one we are not inclined to place on landlords without statutory or judicial authority. We thus agree with the judge in holding that United's remedy was a summary action against its tenant, Meehan. Since we hold in part two of this opinion that United is entitled to recover in its summary process action against Meehan, Shaw, as well as Meehan, must vacate the premises. Cf. *Applebee's Northeast, Inc.* v. *Methuen Investors, Inc.*, 46 Mass. App. Ct. 777, 781 (1999).

2. *Action against Meehan.* Meehan stipulated that he stopped payment of rent and that he was served with a legally sufficient notice to quit for nonpayment. He argues, as he did below, that United may not recover because it interfered with his quiet enjoyment in violation of G. L. c. 186, § 14,[6] by entering his apartment in September, 1994, and escorting Shaw from the property. Pointing to the previous disruptive incidents involving Shaw and to the fact that as recently as June, 1994, it was reported that Meehan had asked United to escort Shaw from the premises, the judge concluded that United had acted reasonably and had not interfered with *his* quiet enjoyment. The conclusion was warranted, as was the judge's determination that "United was acting as a prudent and careful landlord to protect Meehan's property during his absence . . . [and] owed a duty to the other residents at Church Park to prevent unauthorized persons from remaining at the development."

Meehan also contends, as he did at trial, that United waived any breach of the lease occasioned by reason of Shaw's recurrent presence in the apartment. We reject the argument as the judge's conclusion finding an absence of waiver is supported by the evidence.

We also see no merit in Meehan's claim that the judge should have permitted him more time to comply with the conditions in the January 29, 1996 order for avoiding forfeiture of the lease. Meehan argues that he was away at sea and radio communications were difficult. As a result, he did not fully understand the implication of his refusal to comply with the payment condi-

---

[6]It is a violation of G. L. c. 186, § 14, for "any lessor or landlord . . . directly or indirectly [to] interfere[] with the quiet enjoyment of any residential premises by the occupant, or [to] attempt[] to regain possession of such premises by force without benefit of judicial process . . . ."

tions set forth in the order. In denying Meehan's motion for reconsideration, the judge noted that Meehan's attorney had been "clear and unequivocal," and had stated that Meehan would not comply with the provision requiring payment of rent "unless and until the landlord approved Valerie Shaw as an approved occupant." In finding that the defendant's offer to comply with the order's conditions came too late, the judge did not abuse his discretion.

*Judgments affirmed.*