Lopez, J.
The plaintiff, Boris Mogilevsky (“Mogilevsky”), brought this action against his former employer and landlord, defendants Doris Keating (“Keating”), Peter Keating, 78 Charles Street Realty Corp., d/b/a Street & Company, and J. Brooks Porter (collectively, “Landlord” or “Defendants”) alleging discrimination and retaliation, inter alia, for the substandard housing he received in exchange for superintendent responsibilities. On January 5, 2000, this matter was before the court for a hearing on the defendant’s motion to dismiss the complaint in its entirety.[3] After hearing, and upon consideration of the memoranda and arguments of counsel, the defendants’ motion is ALLOWED in part and DENIED in part.
BACKGROUND
The following facts are taken as true for the purposes of this motion. In July 1994, Mogilevsky was hired by Keating & Company, Inc. to act as a superintendent at 105-107 Beacon Street in exchange for housing in the basement apartment of 105 Beacon Street starting on September 1, 1994. (Mogilevsky Amended Complaint ¶¶7, 9.) Mogilevsky was to oversee the property located at 105 Beacon Street and 107 Beacon Street, managed by Street & Company, Inc. [Id. at ¶¶7, 8.) Under the terms of the agreement, heat and hot water were to be provided by the Landlord. [Id. at 1110.)
During Mogilevsky’s first winter in the apartment, the natural gas stove was sealed by the gas company because of the dangerous condition it posed. (Id. at ¶ 12.) For the next four years, Mogilevsky had insufficient heat. [Id. at ¶ 13.) In addition, during the winter of October 1997 to February 1998, Mogilevsky had no hot water and no water at all in his kitchen sink. (Id. at ¶ 15.) In addition, a washer and dryer installed near his apartment were not properly vented and Mogilevsky suffered from the fumes, gases and moisture. (Id. at ¶14.) Further, insulation in the building was inadequate. (Id. at ¶16.)
Mogilevsky complained to the Landlord about the insufficient heat and other problems with the apartment both orally and in writing, though exact dates are not provided. (Id. at ¶19.) On several occasions, though Mogilevsky does not say on what dates, defendants Keating and Porter responded to Mogilevsky’s complaints with derogatory comments such as, since Mogilevsky was Russian, he should be used to the cold, and Keating said Mogilevsky complained “like an old Jew.” (Id. at ¶20.) Keating, however, assured Mogilevsky that: his heating would be corrected; his kitchen would be renovated; the building’s insulation would be improved; the laundry facilities would be vented properly; and that Mogilevsky would continue to be the supervisor of the property after the renovations were completed. (Id. at ¶¶24, 25.) As the renovations progressed, it became clear to Mogilevsky that none of the renovations promised by the Defendants would come to pass. (Id. at ¶26.) Mogilevsky again complained about the deficiencies in the apartment and the Defendants’ failure to honor the agreement. (Id.)
In April 1998, Keating and her son Peter Keating advised Mogilevsky that his employment would be terminated. (Id. at ¶27.) In addition, Keating told Mogilevsky that he could be terminated “because we don’t like your accent.” (Id.) Mogilevsky received a letter dated June 24, 1998 advising him that his position of superintendent was being eliminated and requesting that he move out before August 31, 1998. (Id. at ¶28.)
On or about August 28, 1998, Mogilevsky made a complaint to the City of Boston Inspectional Services Department (“BIS”), which subsequently issued a citation for code violations including lack of proper heating facilities and improper ventilation of the laundry facilities. (Id. at ¶30.) On September 26, 1998, Mogilevsky filed two complaints with the Massachu *333 setts Commission Against Discrimination {“MCAD”) one alleging employment discrimination and another alleging housing discrimination. (Id. at ¶¶31, 32.) The MCAD subsequently dismissed Mogilevsky’s employment discrimination complaint because of a lack of jurisdiction, (id. at ¶31.)
In March 1999, the Defendants (with the exception of Peter Keating and J. Brooks Porter) threatened to sue Mogilevsky because of the complaints he made to BIS and the MCAD. (Id. at ¶33.) On July 30, 1999, Mogilevsky filed his complaint in this Court. On or about August 25, 1999, Mogilevsky sent a formal written demand for relief under G.L.c. 93A upon the Defendants. (Id. at ¶36.) The Defendants responded by reiterating the threats to sue Mogilevsky if he pursued his claims. (Id. at ¶¶33, 34, 37.)
DISCUSSION
This court must accept as true the well pleaded factual allegations of the complaint, as well as any reasonable inferences to be drawm in the plaintiffs favor under Mass.R.Civ.P. 12(b)(6). See Fairneny v. Savogren Co., 422 Mass. 469, 470 (1996); Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991), and cases cited. A “complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). “[I]t is enough for the complaint to contain ... a short and plain statement of the claim showing that the pleader is entitled to relief.” Charbonnier v. Amico, 367 Mass. 146, 152 (1975). See Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979). Further, a complaint should not be dismissed, merely because it asserts a new or extreme theory of liability or improbable facts. See Coolidge Bank & Trust Co. v. First Ipswich Co., 9 Mass.App.Ct. 369, 370 (1980).
1. Status.
As an initial matter, it is necessary to determine Mogilevsky’s status. The parties have entered into an agreement whereby Mogilevsky would provide superintendent services in exchange for housing. Mogilevsky alleges that the housing he bargained for is required to meet minimum standards of habitability and that he is entitled to secure that compliance under our laws. The Defendants maintain, however, that Mogilevsky is a licensee and has no right to the protections afforded tenants in the Commonwealth or under federal law. There are no appellate decisions on this exact question. A ruling on this question is necessary to resolve this motion to dismiss. After a review of related decisions and relying on principles of statutory construction, this Court finds, as a matter of law, that the laws relative to requiring and securing the right to habitable premises are available to individuals who receive housing in exchange for services, even if those individuals are considered to be licensees.
In reaching these conclusions, the Court relies on Serreze v. YWCA of Western Massachusetts, Inc., 30 Mass.App.Ct. 639 (1991).[4] There, the YWCA sought to evict plaintiffs from housing provided pursuant to a transitional housing program, alleging that the plaintiffs were clients in a temporary treatment program, and, as such, licensees not statutorily protected under landlord-tenant law. Recognizing that “the regulatory scheme underlying the transitional housing program suggests an intention to ‘depart from traditional concepts of the landlord-tenant relationship,’ ” the Serreze court found that “the existence of a classic ‘tenancy’ ... is not dispositive, for G.L.c. 186, §14, does not require such a relationship for statutory protections to attach.” Serreze, 30 Mass.App.Ct. at 642-43.
Remedial statutes, such as the ones invoked here, are to be liberally construed to effectuate the legislative purpose. See id. at 643 n.9, citing Deas v. Dempsey, 403 Mass. 468, 470 (1988). Clearly, the legislative purpose underlying the laws requiring minimum standards of habitability for housing intended for human habitation is to secure decent and safe housing for the people in the Commonwealth. That certain individuals exchange services for housing does not place them outside the legislative policy requiring habitable housing in the Commonwealth. To find otherwise would leave categories of individuals such as nannies, caretakers, and housekeepers, among others, without recourse to decent and safe housing.
Our laws relative to habitable housing use the words occupant and tenant. Where the term “occupant” is used, such as in the State Sanitary Code[5] and the provisions of G.L.c. 186, §14,[6] the legislative intent is clear. Individuals such as Mogilevsky who receive housing in exchange for services are occupants and therefore, are covered by those provisions.
Section 18 of Chapter 186 uses the word “tenant.” The term “tenant” is to be liberally construed to effectuate an appropriate remedy. See Serreze, 30 Mass.App.Ct. at 643 n.9, citing Brown v. Guevrier, 390 Mass. 631 (1983); Arsenault v. Chicopee Housing Authority, 15 Mass.App.Ct. 939, 941 (1983). Section 18 protects individuals who seek to secure their right to decent and safe housing from reprisals. Having found that occupants of housing intended for human habitation have the right to have their housing meet minimum standards of habitability, it is axiomatic that they would be protected by the laws that afford them the right to secure that right. Therefore, in order to effectuate the legislative purpose, the Court finds that the term “tenant” in G.L.c. 186, §18 includes individuals who receive housing in exchange for services. To find otherwise would render the right to habitable housing for individuals such as Mogilevsky meaningless. Defendants’ motion to dismiss will be treated in accordance with the above rulings.
*334 2.Mogilevsky's Habitability Claims.
Mogilevsky alleges that the Defendants failed to provide him with heat, hot water and a properly ventilated place to live, amounting to a breach of the warranty of habitability and serious interference with the covenant of quiet enjoyment.[7] (Mogilevsky Amended Complaint ¶ ¶ 11, 39-44.) Accepting the facts alleged by Mogilevsky as true, it cannot be stated that Mogilevsky can prove no set of facts to support his claim. The motion to dismiss, therefore, is denied as to: Count I, breach of warranty of habitability: Count II, interference with quiet enjoyment; and Count III, failing to provide heat and hot water.
3.Reprisals/Retaliation.
Mogilevsky alleges that he was retaliated against for complaining to the Landlord about housing conditions in violation of G.L.c. 186, §18.[8] (Id. ¶45.) Mogilevsky alleges that in April, when he realized that his apartment would not be renovated, he complained in writing to the Landlord. (Id.) Because of that complaint and for no other reason, Mogilevsky maintains that his employment and housing were terminated. (Id.) The statute provides protection from “[a]ny person . . . who threatens to or takes reprisals against any tenant of any residential premises for the tenant’s act of . . . complaining of such violation or suspected violation in writing to the landlord . . .” G.L.c. 186, §18. Taking the facts alleged by Mogilevsky as true, the Defendants’ motion to dismiss is denied as to Count IV, the termination of Mogilevsky’s employment and eviction in retaliation for his complaints.
Mogilevsky also alleges that “in March 1999 the Defendants (with the exception of Peter Keating and J. Brooks Porter) threatened to file suit or bring counterclaims against the Plaintiff for multiple damages and attorneys fees if he pursued his rights further.”[9] (Mogilevsky Amended Complaint ¶¶33, 34.) Mogilevsky contends that the Defendants’ actions fall under threats to take “reprisals” under G.L.c. 186, §18[10] and attempting to “intimidate, threaten, or interfere” under G.L.c. 151B, §4 par. 4A.[11] Taken as true, Mogilevsky alleges facts that the Defendants violated G.L.c. 186, §18 by threatening to retaliate against him for having made the complaint to BIS and that the Defendants threatened to sue him or bring counterclaims against him because of the complaints he filed with the MCAD, in violation of G.L.c. 15 IB, §4, par. 4A.[12] (Id. at ¶47.) As such, the Defendants’ motion to dismiss Count V, threatening to sue for having made the complaint, is denied.
Mogilevsky alleges further that the termination of his employment was a violation of public policy. (Id. at ¶¶29, 55.) Taking Mogilevsky’s allegations as true, he is an at-will employee who, immediately after becoming aware that his apartment would not be renovated and after making complaints to the Landlord about the living conditions of his apartment, was told that his position would be terminated. (Id. at ¶¶26-29.) Mogilevsky is not arguing that the reasons for his dismissal are the formal complaints with the BIS or the MCAD, which had not yet occurred, but is arguing that his complaint to the Landlord in April was the reason he was fired. As Mogilevsky maintains that he was terminated solely because he was asserting the legally guaranteed right of having a habitable apartment under the State Sanitary Code, Defendants’ motion to dismiss Count IX is denied.
4.G.L.c. 93A.
Mogilevsky alleges that the Defendants’ interference with, inter alia, the warranty of habitability, the covenant of quiet enjoyment, and his right to heat and hot water qualify as an injury under G.L.c. 93A, §2 because they are “unfair or deceptive acts or practices.” (Id. at ¶¶39, 41, 43, 59.) See Cruz Management Co. v. Thomas, 417 Mass. 782, 790 (1994). Mogilevsky maintains that the Defendants told Mogilevsky that the apartment’s conditions would be fixed and Mogilevsky remained in the Defendants’ employ because he fully expected the conditions to be remedied. Further, Mogilevsky alleges that he is eligible for damages under 93A, §9, because the Defendants’ actions qualify as a “willful or knowing violation,” since the Defendants knew of the condition in which he lived. (Mogilevsky Amended Complaint at ¶59.) Cruz, 417 Mass. at 790-91. Therefore, Defendants’ motion to dismiss Count XI is denied.
5.Mogilevsky’s Discrimination Claims.
Mogilevsky alleges that the Defendants violated G.L.c. 15IB, §4 because the terms, conditions or privileges of Mogilevsky’s housing and/or the Defendants’ furnishing of facilities and services were affected by a hostile environment because of Mogilevsky’s religion, and/or his national origin.[13] (Id. at ¶49.) A plaintiff alleging housing discrimination may commence a civil action in Superior Court within one year after the unlawful discrimination occurred without first filing a complaint with the MCAD.[14] See King v. First, 46 Mass.App.Ct. 372, 373 n.2 (1999); G.L.c. 15IB, §9. Mogilevsky maintains that under the current statute, he may include others not included in his MCAD complaint by filing a civil action directly against them within one year of the alleged discrimination.[15]
Mogilevsky filed this claim in Superior Court on July 30, 1999, so he is unable to cast the shadow of the one-year statute of limitations on any alleged discrimination by other defendants since the last pertinent heating period, from September 15, 1997 to June 15, 1998, had already passed. As such, he is unable to include any other defendants in his Superior Court complaint besides Keating, the individual he names in the MCAD complaint.
Mogilevsky filed his housing complaint with the MCAD on September 26, 1998 and under G.L.c. 151B, §5, has available a six-month statute of limitations. As Mogilevsky alleges that because of his religion, and/or *335 national origin he was denied heat from March 26, 1998 (six months prior to the filing) until June 15, 1998 (the end of the heating season under the CMR), the motion to dismiss is denied as to Count VI, housing discrimination under state law, as it relates to Doris Keating in her capacity as trustee of the Green Nominee Trust. The motion to dismiss is granted for Count VI, as to those not named in the MCAD complaint, Peter Keating, Keating and Company, Inc., 78 Charles Street Realty Corp, d/b/a Street & Company, and J. Brook Porter.
Mogilevsky alleges in addition, that the Defendants’ actions violate the Fair Housing Act (“Act") because they discriminated against him in the terms, conditions or privileges and/or the provision of services or facilities in connection with the rental of a dwelling.[16] (Mogilevsky Amended Complaint ¶51.) As the Act defines a dwelling as “any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families,” it would apply to Mogilevsky’s apartment. 42 U.S.C. §3602(b). The Act defines the term “to rent” as including “to lease, to sublease, to let and otherwise to grant for a consideration the right to occupy premises not owned by the occupant.” 42 U.S.C. §3602(e). The agreement between the parties here, services in exchange for housing, is covered by this language. Mogilevsky filed his action on July 30, 1998, within two years of the alleged discriminatory housing practice. See 42 U.S.C. §3613(a)(1)(A). Therefore, he captures the two previous winters, from September 15, 1996 to June 15, 1997 and from September 15, 1997 to June 15, 1998 when he alleges he was deprived of a habitable apartment for discriminatory reasons. The motion to dismiss Count VII, housing discrimination under 42 U.S.C. §3604, is denied.
6.Equal Rights Act.
Mogilevsky contends that, under the state Equal Rights Act, he was deprived of adequate housing conditions under the implied conditions of the contract and was unable to enforce the contract between him and the Defendants. (Mogilevsky Amended Complaint at ¶53.) In other words, Mogilevsky held up his end of the bargain by fulfilling his superintendent’s obligations but the Defendants failed to do the same.[17] General Laws c. 93, §102 does not permit duplicative claims as it states that it provides a remedy “except as otherwise provided or permitted by law.” While it has been recognized that G.L.c. 151B is the exclusive remedy for employment discrimination claims, Mogilevsky is not bringing this claim as an employee, but as an occupant of the premises. See Charland v. Muzi Motors, 417 Mass. 580, 589 (1994). Mogilevsky contends that this is not a duplicative claim because he was denied the opportunity afforded all people of enforcing the terms of the contract, namely habitable housing. To the extent that this claim relates to Mogilevsky’s unique situation and the deprivation of his right to enforce the terms of the contract, the Defendants’ motion to dismiss Count VIII, violation of the Equal Rights Act is denied.
7.Intentional Infliction of Emotional Distress.
Mogilevsky alleges also that due to the condition of the apartment and the racial comments he was subjected to, he suffered severe emotional distress. (Mogilevsky Amended Complaint ¶57.) Mogilevsky maintains that he was made physically ill and suffered aggravated illness from the lack of heat and other conditions of the apartment. (Id. at ¶22.) Mogilevsky alleges that the Defendants knew that the conditions of the apartment were intolerable and their promises and subsequent refusal for adequate heat may be regarded as “extreme or outrageous conduct” that is “beyond all possible bounds of decency.” See Simon v. Soloman, 385 Mass. 91, 95 (1982) (holding that a landlord who refused to fix a premises that repeatedly flooded could be liable for reckless infliction of emotional distress). Taken as true, the emotional distress caused by living the living conditions and discriminatory treatment is sufficiently alleged by Mogilievsky. Consequently, the Defendants’ motion to dismiss Count X is denied.
8.Pond Realty Trust.
The Defendants argue that Pond Realty Trust should be dismissed because the premises were conveyed from the Pond Realty Trust to the Green Nominee Trust in September 1995. The Defendants argue that: 1) Counts I through V and IX through XI, as they fall únder tort law, have a three year statute of limitations; 2) Count VI has a six months or one year statute of limitations, under G.L.c. 151B; 3) Count VH, 42 U.S.C. §3604, has a two year statute of limitations; 4) Count VIII has a four year statute of limitations under G.L.c. 93, §102, as it pertains to a contract; and 5) Count XI has a four year statute of limitations under G.L.c. 93A. Running from the date of Mogilevsky’s original complaint filed July 30, 1999, the only claims which extend back to the time period of Pond Realty Trust are Counts VIII and XI. As such, Counts VIII and XI remain as to Pond Realty Trust and the remaining Counts are dismissed.
ORDER
For the foregoing reasons, the Defendants’ motion to dismiss is DENIED as to Counts I, II, III, IV, V, as pertaining to Doris Keating in VI, VII, VIII, IX, X, XI and is GRANTED as to all other Defendants (Peter Keating, Keating & Co., Inc., 78 Charles Street Realty Corp. d/b/a/ Street & Company and J. Brooks Porter) for Count VI. In regards to the Pond Realty Trust, the Defendants’ motion to dismiss is GRANTED as to Counts I, n, HI, IV, V, VI, VII, IX, X and is DENIED as to Counts VIII and XI.

The complaint is comprised of the following claims: Count I (breach of warranty of habitability). Count II (interference with quiet enjoyment), Count III (willful or intentional failure to provide heat or water), Count IV (termination of employment and eviction in retaliation for filing a complaint about housing conditions), Count V (threatening to sue for having made complaints to Boston Inspectional Services and the Massachusetts Commission Against Discrimination), Count VI (housing discrimination under G.L.c. 151B, §4), Count VII (housing discrimination under 42 U.S.C. §3604, the Fair Housing Act). Count VIII (violating G.L.c. 93, §102, the Massachusetts Equal Rights Act), Count IX (wrongful termination in violation of public policy), Count X (intentional or reckless infliction of emotional distress), Count XI (violation of the Consumer Protection Act, G.L.c. 93A, §2).

The Defendants rely on Allendale Farm, Inc. v. Koch, No 97-350 (Norfolk Super.Ct. August 9, 1999) (Brady, J.), to support their contention that Mogilevsky as a licensee is not entitled to the right to habitable premises under our laws. Allendale, however, did not address the conditions of the housing provided incident to employment, but rather whether a licensee was entitled to predeprivation process afforded tenants under G.L.c. 186 once the employment was terminated. For that reason, Allendale is inapposite to the case at bar.

The State Sanitary Code states, in relevant part: ”[n]o person shall occupy as owner-occupant or let to another for occupancy any dwelling, unit, mobile dwelling unit, or rooming unit for the purpose of living, sleeping, cooking or eating therein, which does not comply with the requirements of 105 CMR 410.000." Under the State Sanitary Code, a “dwelling” means “every building or shelter including but not limited to rooming houses and temporary housing used or intended for human habitation and every other structure or condition located within the same lot line whose existence causes or is likely to effect noncompliance with the provisions of 105 CMR 410.000.” 105 CMR 410.020. A “dwelling unit” is defined as "the room or group of rooms within a dwelling used or intended for use by one family or household for living, sleeping, cooking and eating.” Id. The term “occupant," under the State Sanitary Code means “every person living or sleeping in a dwelling.” Id. "Owner” is defined as one who, alone or with others:
“(1) has legal title to any dwelling, dwelling unit, mobile dwelling unit, or parcel of land, vacant or otherwise, including a mobile home park; or (2) has care, charge or control of any dwelling, dwelling unit, mobile dwelling unit or parcel of land, vacant or otherwise, including a mobile home park, in any capacity including but not limited to agent, executor, executrix, administrator, administratrix, trustee or guardian of the estate of the holder of legal title; or (3) is a mortgagee in possession of any such property; or (4) is an agent, trustee or other person appointed by the courts and vested with possession or control of any such property ...”

Id.

GeneralLaws c. 186, §14 provides, in relevant part, that:
[a]ny lessor or landlord of any building or part thereof occupied for dwelling purposes . . . who is required by law or by the express or implied terms of any contract or lease ... to furnish water, hot water, heat . . . who willfully or intentionally fails to furnish such . . . when the same is necessary to the proper or customary use of such building or part thereof. . . shall be punished.

The State Sanitary Code provides that the
owner shall provide heat in every habitable room and every room containing a toilet, shower, or bathtub to at least 68 degrees F (20 degrees C) between 7:00 A.M. and 11:00 P.M. and at least 64 degrees F (17 degrees C) between 11:01 P.M. and 6:59 A.M. every day other than during the period from June 15th to September 15th, both inclusive.
105 CMR 410.201.

Mogilevsky states that he "complained orally and in writing to the Landlord and her agents on numerous occasions about the lack of heat and other problems affecting the premises,” but fails to allege the specific dates of these occurrences.

As these activities by the Defendants came after the filing of the MCAD complaints, they are not included in the sworn statements. As such, there are no sworn statements documenting the allegations of retaliation for having made the complaint to BIS and the MCAD.

General Laws c. 186, §18 provides, in relevant part:
[alny person . . . who threatens to or takes reprisals against any tenant of any residential premises for the tenant's act of, commencing, proceeding with, or obtaining relief in any judicial or administrative action the purpose of which action is to obtain damages under, or otherwise enforce, any federal, state or local law, regulation, by-law or ordinance, which has as its objective the regulation of residential premises ... or reporting or complaining of such violation or suspected violation in writing to the landlord or to the agent of the landlord . . . shall be liable for damages
(Emphasis added.)
The receipt of any notice of termination of tenancy . . . within six months after the tenant has commenced, proceeded with, or obtained relief in such action, exercised such rights, made such report or complaint . . . relating to, the building in which the tenant resides, shall create a rebuttable presumption that such notice or other action is a reprisal against the tenant for engaging in such activities. Such presumption shall be rebutted only by clear and convincing evidence that such person’s action was not a reprisal against the tenant and that such person had sufficient independent justification for taking such action, and would have in fact taken such action, in the same manner and at the same time the action was taken, regardless of tenants engaging in, or the belief that tenants had engaged in, activities protected under this section.
(Emphasis added.)

G.L.c. 151B, §4 par. 4A states, ”[i]t shall be unlawful practice: [f]or any person to coerce, intimidate, threaten or interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter ...”

The MCAD dismissed the employment discrimination complaint for lack of jurisdiction (employers with fewer than six employees are not covered by G.L.c. 15 IB). The housing discrimination complaint is now pending before this Court. The validity of the claims are irrelevant as to whether 15IB retaliation protections apply.

General Laws c. 151B, §4 par. 6 (b) states, in relevant part:
[i]t shall be unlawful practice: [f]or the owner, lessee, sublessee, licenced real estate broker, assignee or managing agent of . . . [a] multiple dwelling ... to discriminate against any person because of his race, religious creed, color [or] national origin ... in the terms, conditions or privileges of such accommodations ... or in the furnishings of facilities and services therewith . . .

Under G.L.c. 151B, §9,
[a] ny person claiming to be aggrieved by an unlawful practice relative to housing under this chapter . . . may, at the expiration of ninety days after the filing of a complaint with the commission . . . but not later than three *337 years after the alleged unlawful practice occurred, bring a civil action for damages or injunctive relief or both in the superior or probate court for the county in which the alleged unlawful practice occurred . . . The petitioner shall notify the commission of the filing of the action and any complaint before the commission shall then be dismissed without prejudice, and the petitioner shall be barred from subsequently bringing a complaint on the same matter before the commission.

The King court recognized that “|n]o Massachusetts appellate decision has yet wrestled with the question whether the failure to name a party in the complaint filed with the MCAD precludes a later court action against the unnamed party without exception." King, 46 Mass.App.Ct. at 374, citing Chatman v. Gentle Dental Center of Waltham, 973 F.Sup. 228, 233 (D.Mass. 1997). Even so, the Appeals Court affirmed the Superior Court’s granting of summary judgment for the King defendant because the plaintiff failed to comply with the procedural requirements of G.L.c. 15 IB, §§5 and 9. King, 46 Mass.App.Ct. at 375.

 42 U.S.C. §3604(b) provides, in relevant part, that it shall be unlawful “[t]o discriminate against any person in the terms, conditions, or privileges of. . . rental of a dwelling, or in the provision of services or facilities in connection therewith, because of. . . religion ... or national origin.”

General Laws c. 93, §102 provides, in relevant part:
All persons within the commonwealth, regardless of sex, race, color, creed or national origin, shall have, except as otherwise provided or permitted by law, the same rights enjoyed by white male citizens, to make and enforce contracts ... to lease),] . . . hold and convey real and personal property . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property.